IN RE INTEREST OF SUNSHINE A. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. LAURA A., ALSO
KNOWN AS LAURA H., ALSO KNOWN AS LAURA J., APPELLANT.
602 N.W.2d 452

Filed November 12, 1999.   No. S-98-1381.

Jennifer A. Huxoll, of Glynn & Bollerup, P.C., for appellant.

Gary E. Lacey, Lancaster County Attorney, and Marcie A. Hagerty for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Laura A. is the natural mother of Sunshine A., born May 26, 1986; Joseph A., born August 3, 1988; and Maria A., born April 29, 1991. Laura appeals from an order of the separate juvenile court for Lancaster County which terminated her parental rights to each of the three minor children pursuant to Neb. Rev. Stat. § 43-292(1) and (7) (Reissue 1998) and committed the children to the custody of the Nebraska Department of Health and Human Services (DHHS). Laura contends that there is insufficient evidence to establish abandonment under § 43-292(1) and that the juvenile court's retroactive application of § 43-292(7), operative July 1, 1998, violated her due process rights. We conclude that there is clear and convincing evidence which supports termination of parental rights under § 43-292(1) and therefore affirm.

## FACTS

In June 1995, the three children who are the subject of this proceeding were removed from Laura's physical custody and placed in the temporary legal custody of DHHS because of filthy conditions in Laura's home and her failure to adequately feed and clothe them. In July, following adjudication under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993), the children were placed in the home of their maternal grandmother, Anna Hopkins, and her husband, Gene Acosta. The children have

resided in Hopkins' home at all times since the original placement. During that time, various behavioral, speech, and educational deficiencies they exhibited at the time of placement have improved considerably, and all of the children have become involved in school and in numerous extracurricular activities.

On July 29, 1998, the State filed a supplemental motion to terminate Laura's parental rights pursuant to § 43-292(1), (5), and (7). A termination hearing was held on October 26. Laura did not attend, but she was represented by counsel. Also present at the hearing were a guardian ad litem for the children and a guardian ad litem appointed for Laura. Hopkins and Stephanie Stromp, a caseworker employed by DHHS, appeared as witnesses for the State.

Hopkins testified that Laura last saw her children in July 1997. Laura then left Nebraska so she could travel throughout the country "spreading the word about parents . . . having their children taken away by the State." According to Hopkins, Laura claims to be building momentum for an uprising by people who resent such governmental action and believes "the whole country is really moving in behind her." At the time of the hearing, Laura had been living in a bus stop in El Paso, Texas, for about a year. She derives her income from standing on a street corner with other people, singing, dancing, and begging for money.

Between January and October 1998, Laura telephoned the Hopkins residence 50 or 60 times, averaging once or twice a week. She spoke to her children on two or three of these occasions. During these conversations, Laura always asked about the children's health but did not inquire about their progress in school. She changed the subject when Hopkins attempted to tell her about the children's activities because she was " 'not interested in that.' " The children have stopped offering information about their education and activities to avoid receiving Laura's negative response, and Joseph does not wish to speak with her at all. Hopkins and the children have no direct means of contacting Laura. They can attempt to reach her by calling two pay telephone numbers Laura has provided and leaving a message with anyone who answers, or by leaving messages with the local police or outreach workers in El Paso. Hopkins testified that

Laura wants her three children to live the kind of lifestyle she is living, because Laura feels "there was some meaning in that."

Since January 1998, Laura has provided no financial or material support for her children, either directly or through DHHS. During the time the children have been living with Hopkins, Laura has sent them small gifts approximately once every 3 to 6 months. She sent gifts more frequently during the 3 months preceding the termination hearing. Laura has indicated to Hopkins that she wants to continue to be the children's mother; however, within the year preceding the termination hearing, she had not expressed a willingness to return to Lincoln to parent her children, stating only that if she returns to Lincoln, she would like to see them.

Laura told Hopkins that she has no intention of following orders entered by the juvenile court establishing requirements for reunification with her children. Rather, Laura believes that traveling around the country talking to people about "the injustice of it all" is the more appropriate method for obtaining the return of her children and hopes to fundamentally change the system. Laura told Hopkins that she does not wish to follow the juvenile court's orders because her cause extends beyond her immediate situation.

Hopkins has a master's degree in social work and is employed as a licensed psychotherapist working with families and children. She testified that when the children came to live with her, their performance in school was not at an appropriate level for their ages, but that they have subsequently made significant improvement. As their grandmother and caregiver, Hopkins believes that it is in the best interests of the children to remain in her care.

Stromp, the DHHS caseworker assigned to this case, testified that she has had some contact with Laura since August 1996, but that communication has been difficult because Laura does not have a permanent address or telephone number. Further, Stromp testified that she has never been able to meet with Laura consistently and has not met with Laura at all since May 1997. It was Stromp's opinion that terminating Laura's parental rights would be in the children's best interests. She based this opinion upon the length of time the children have been out of Laura's home

and the fact that they have a safe and secure environment in Hopkins' home where their educational and other needs are being met. Stromp further opined that the children need permanency, which Hopkins and Acosta could provide upon adoption, and that the children want to remain with Hopkins. According to Stromp, Laura has not taken advantage of opportunities or made any progress in correcting the problems which led to the children's removal and, thus, has not complied with the juvenile court's orders. Stromp stated that the DHHS permanency plan called for adoption of the children by Hopkins and Acosta upon termination of parental rights. No evidence was offered on behalf of Laura.

In an order filed November 4, 1998, the juvenile court made findings based upon clear and convincing evidence that Laura had abandoned her children for 6 months or more immediately prior to the time the motion to terminate parental rights was filed; that the children had been "in an out-of-home placement for eighteen (18) or more months and fifteen (15) of the most recent twenty two (22) months"; and that termination of the parental rights of Laura to Sunshine, Joseph, and Maria was in the best interests of the children. Based upon these findings, the court terminated Laura's parental rights pursuant to § 43-247(3)(a) and § 43-292(1) and (7), but dismissed the State's allegation of § 43-292(5) as a ground for termination. Laura perfected this appeal.

## ASSIGNMENTS OF ERROR

Laura contends, restated, that the juvenile court erred in finding that the State had met its burden of proving by clear and convincing evidence that Laura had abandoned her minor children for 6 months or more immediately prior to the filing of the motion and that termination of Laura's parental rights was in the best interests of her minor children. Laura further contends that the juvenile court erred by retroactively applying the amended version of § 43-292(7).

## STANDARD OF REVIEW

In an appeal from a juvenile court order terminating parental rights, the appellate court tries factual questions de

novo on the record. Appellate review is independent of the juvenile court's findings; however, when the evidence is in conflict, the appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *In re Interest of Joshua M. et al.*, 256 Neb. 596, 591 N.W.2d 557 (1999); *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998). An order terminating parental rights must be based on clear and convincing evidence. *In re Interest of Constance G., supra*; *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). A juvenile's best interests are a primary consideration in determining whether parental rights should be terminated as authorized by the Nebraska Juvenile Code. *In re Interest of C.A.*, 235 Neb. 893, 457 N.W.2d 822 (1990); *In re Interest of J.L.M. et al.*, 234 Neb. 381, 451 N.W.2d 377 (1990).

## ANALYSIS

The language of § 43-292 imposes two requirements before parental rights may be terminated. First, requisite evidence must establish the existence of one or more of the circumstances described in subsections (1) to (10) of § 43-292. Second, if a circumstance designated in subsections (1) to (10) is evidentially established, there must be the additional showing that termination of parental rights is in the best interests of the child, the primary consideration in any question concerning termination of parental rights. *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987). Each of the requirements prescribed by § 43-292 must be proved by clear and convincing evidence. *Id.* Clear and convincing evidence means that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). In this case, the juvenile court found that termination was in the best interests of the children and that there was clear and convincing evidence establishing the grounds for termination specified in § 43-292(1) and (7).

### SUFFICIENCY OF EVIDENCE OF PARENTAL ABANDONMENT

At all times relevant to this action, § 43-292(1) specified as an independent basis for termination of parental rights the

circumstance in which "[t]he parents have abandoned the juvenile for six months or more immediately prior to the filing of the petition." We have defined "abandonment" in this context as a parent's intentionally withholding from a child, without just cause or excuse, the parent's presence, care, love, protection, maintenance, and the opportunity for the display of parental affection for the child. *In re Interest of C.K., L.K., and G.K.*, 240 Neb. 700, 484 N.W.2d 68 (1992); *In re Interest of A.G.G.*, 230 Neb. 707, 433 N.W.2d 185 (1988). The question of abandonment is largely one of intent, to be determined in each case from all the facts and circumstances. *In re Interest of K.M.S.*, 236 Neb. 665, 463 N.W.2d 586 (1990); *In re Interest of C.A., supra*; *In re Interest of A.G.G., supra*.

■ A significant and uncontroverted fact relevant to Laura's intent to fulfill her parental responsibilities is her voluntary absence from this state after the children were removed from her home. The record reflects that while Laura has traveled extensively throughout the country, she has not returned to Nebraska, where her children reside, since July 1997, and that she did not appear at the termination hearing. We have stated that if a parent voluntarily, but unreasonably or unjustifiably, departs from the state of residence of the parent's child or children, such departure may constitute parental abandonment of the child or children. *In re Interest of C.K., L.K., and G.K., supra*; *In re Interest of A.G.G., supra*. See *In re Interest of C.A.*, 235 Neb. 893, 457 N.W.2d 822 (1990). For example, in *In re Interest of C.K., L.K., and G.K., supra*, a mother was absent from Nebraska for over 3½ years, during which time she had 30 different addresses while in 6 different states. She did not return to Nebraska until 1 month prior to the termination hearing, claiming that protracted unemployment rendered her financially unable to return sooner and that she was helping her former common-law husband search for his children. When she did return, she intended to stay only a few weeks before leaving for Minnesota, but then decided to stay longer and resume some visitation with her children when the petition to terminate her parental rights was filed. Further, the mother did not comply with the court-ordered rehabilitation plan, failing to attend numerous therapy sessions, parenting classes, and review

hearings. The mother's psychotherapist stated that the mother remained resistant to participating in therapy and had difficulty understanding why she should be involved. Noting that the mother had elected to remain separated from her children while pursuing other interests, we held that the mother had abandoned her children pursuant to § 43-292(1), justifying termination of her parental rights. We concluded:

> The mother's somewhat nomadic existence left little hope for parentally produced stability in the lives of her children, and her prolonged absence from Nebraska, coupled with her unwillingness to attend to the needs of her children, as demonstrated by her rejection of parenting classes and counseling sessions, demonstrates the mother's disregard for the basic needs of her young children. At a time in the lives of the children when they most needed their mother, there was only maternal itinerancy, not interest.

240 Neb. at 713, 484 N.W.2d at 75. The same can be said of Laura's relationship with her children.

We are not persuaded by the argument made on Laura's behalf that notwithstanding her voluntary separation from her children, she has not abandoned them because she inquires about their health during her regular telephone calls to Hopkins; has sent them small gifts; and has stated, in telephone conversations with Hopkins, that "she wanted to continue to be a mother to her children." Brief for appellant at 10. As we have frequently stated, " '[a]bandonment is not an ambulatory thing the legal effects of which a parent may dissipate at will by token efforts at reclaiming a discarded child.' " *In re Interest of K.M.S.*, 236 Neb. 665, 670, 463 N.W.2d 586, 591 (1990). Parental obligation requires a continuing interest in the child and a genuine effort to maintain communication and association with that child. *In re Interest of E.G.*, 240 Neb. 373, 482 N.W.2d 17 (1992); *In re Interest of K.M.S., supra*. Small tokens of parental affection for a child are an inadequate substitute for parental presence in a child's life. See *In re Interest of C.A.*, 235 Neb. 893, 457 N.W.2d 822 (1990). Stated another way, the obligation which a parent owes to his or her children is not something which can simply be "phoned in."

Based upon our de novo review of the record, we conclude that for a period exceeding 6 months prior to the filing of the supplemental motion to terminate Laura's parental rights, Laura has intentionally, and without just cause or excuse, withheld her presence, care, love, protection, maintenance, and opportunity for display of parental affection from her three children. She has not seen them, furnished them with material or emotional support, or expressed interest in any aspect of their well-being and growth other than their physical health. She has quite clearly chosen to advocate her cause instead of raising her children and has given no indication that she ever intends to do more than periodically inquire about their health. Thus, there exists clear and convincing evidence to support a finding that Laura abandoned her children within the meaning of § 43-292(1).

RETROACTIVE APPLICATION OF § 43-292(7).

When the State's supplemental motion to terminate parental rights was filed on July 29, 1998, and at all subsequent times, § 43-292(7) provided that parental rights could be terminated upon a finding that "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months." This language was derived from an amendment to the statute which became operative July 1, 1998. See 1998 Neb. Laws, L.B. 1041. Prior to its amendment in 1998, this statute provided that termination could be based upon a finding that

> [t]he juvenile has been in an out-of-home placement for eighteen or more consecutive months and the parents have failed to correct the conditions leading to the juvenile's out-of-home placement in spite of reasonable efforts and services to the parents ordered by the court or offered by the Department of Health and Human Services or other designated agency.

§ 43-292(7) (Cum. Supp. 1996).

The juvenile court correctly found that the children were in out-of-home placement for 18 consecutive months *and* 15 of the most recent 22 months, thus meeting the durational requirements of both the current and prior versions of § 43-292(7). However, the juvenile court made no specific finding as to whether Laura failed to correct the conditions which led to the

out-of-home placement despite reasonable efforts and services ordered by the court or DHHS, as required under the prior version of the statute. Based on this, Laura contends on appeal that the juvenile court erred in retroactively applying § 43-292(7), as amended, in violation of her due process rights.

In her brief, Laura acknowledges that the supplemental motion for termination of parental rights "alleged as one of its grounds for termination language of the newly amended §43-292, section (7)." Brief for appellant at 11. Although she was thus placed on notice that the State was proceeding under the amended statute, Laura did not assert a due process challenge in the juvenile court. An appellate court will not consider an issue on appeal that was not passed upon by the trial court. *Vinci v. Nebraska Dept. of Corr. Servs.*, 253 Neb. 423, 571 N.W.2d 53 (1997). Moreover, because we have concluded that the record supports a finding of abandonment under § 43-292(1), we need not reach the issue of whether the juvenile court erred in finding an additional factual basis for termination of parental rights under § 43-292(7), as amended.

BEST INTERESTS OF CHILDREN

Having determined that the State has proved, by clear and convincing evidence, parental abandonment as set forth in § 43-292(1), we must next examine whether it has also shown, by the same quantum of proof, that termination of parental rights would be in the best interests of the children. The record reflects that since their placement in Hopkins' home in July 1995, the three children have grown and thrived. The inappropriate behavior and educational deficiencies noted by Hopkins when the children were initially placed in her care have been corrected. The children currently do well in school and are involved in such diverse activities as sports, chess, and music.

Acknowledging that the children are well cared for by Hopkins, Laura argues that the evidence does not establish that termination of parental rights would be in the best interests of the children, because there was no showing that the "children were experiencing behavior problems or other ill effects due to their time in foster care with their grandmother, or due to an actual or perceived lack of 'permanency.'" Brief for appellant

at 20. She further argues that little would be accomplished by terminating her parental rights, because Hopkins testified that she would probably allow the children to have the same type of contact with Laura that they have had since Laura last saw them in 1997. Laura contends that termination of parental rights and adoption of the children by Hopkins may diminish the children's eligibility for state benefits and concludes that "there was no showing that the children's current placement, as it stood prior to the termination of [Laura]'s parental rights, was failing to meet their 'permanency' needs." Brief for appellant at 21.

The fact that children benefit from foster placement after they are removed from the custody of a natural parent does not lend support to an argument that termination of parental rights is not in their best interests. In *In re Interest of E.G.*, 240 Neb. 373, 482 N.W.2d 17 (1992), we noted that "[p]erhaps the most significant piece of evidence" bearing on the issue of whether termination of parental rights was in the best interests of the child was the fact that while in foster care, the child's "arrested state of development" at the time of removal from custody was being reversed. *Id.* at 382, 482 N.W.2d at 23. Moreover, Laura's argument in this regard clearly illustrates her failure to understand and appreciate a parent's role in raising a child. We have held that where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *Id.*; *In re Interest of R.A.*, 226 Neb. 160, 410 N.W.2d 110 (1987), *disapproved on other grounds, In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147. The concept of permanency is not simply a "buzzword," as Laura contends, but, rather, a recognition that when there is no reasonable expectation that a natural parent will fulfill his or her responsibility to a child, the child should be given an opportunity to live with an adult who has demonstrated a willingness and ability to assume that responsibility *and* has a permanent legal obligation to do so.

There is clear and convincing evidence that since their placement with Hopkins, the three children have lived in a stable, safe,

and secure environment where their educational, physical, and emotional needs are met. It is also evident that Laura has been either unable or unwilling to meet these needs in the past and demonstrates no interest or ability to do so in the future. We are satisfied that termination of Laura's parental rights, enabling the children's adoption by Hopkins, is in the children's best interests.

## CONCLUSION

Based upon our de novo review of the record, we conclude that there is clear and convincing evidence that Laura abandoned Sunshine, Joseph, and Maria for a period of at least 6 months prior to the filing of the motion to terminate her parental rights and that there is clear and convincing evidence that such termination is in the best interests of the children. Accordingly, we affirm the judgment of the juvenile court terminating the parental rights of Laura to these children.

AFFIRMED.