IN RE INTEREST OF DUSTIN H. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE,
V. TONYA H., APPELLANT.
IN RE INTEREST OF LACIE H.,
A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. MICHAEL S., APPELLANT.
608 N.W.2d 580

Filed April 7, 2000.   Nos. S-99-141, S-99-351.

Annette Farnan, of Legal Aid Society, Inc., for appellant Tonya H.

Steven M. Renteria, of Wintroub, Rinden, Sens & McCreary, for appellant Michael S.

James S. Jansen, Douglas County Attorney, Kathleen S. Pallesen, and Kim B. Hawekotte for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Tonya H. appeals from an order of the separate juvenile court of Douglas County which terminated her parental rights to Dustin H., Brandon H., Lacie H., Brooke C., and Tara C. We have consolidated Tonya's appeal with that of Michael S., who appeals from an order of the separate juvenile court which terminated his parental rights to Lacie.

## SCOPE OF REVIEW

■ In an appeal from a juvenile court order terminating parental rights, an appellate court tries factual questions de novo on the record. Appellate review is independent of the juvenile court's findings; however, when the evidence is in conflict, the appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *In re Interest of Michael B. et al.*, 258 Neb. 545, 604 N.W.2d 405 (2000).

■ Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Thompson v. Kiewit Constr. Co.*, 258 Neb. 323, 603 N.W.2d 368 (1999).

■ Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *US Ecology v. State*, 258 Neb. 10, 601 N.W.2d 775 (1999).

■ In the absence of a judgment or order finally disposing of a case, an appellate court is without jurisdiction to act and must dismiss the purported appeal. *In re Application of SID No. 384*, 256 Neb. 299, 589 N.W.2d 542 (1999).

## FACTS

On March 24, 1998, the State filed a petition alleging that Dustin, Brandon, Lacie, Brooke, and Tara were within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Supp. 1997) because of the faults and habits of Tonya. An amended petition alleged that

on or about March 19, Tonya left the children and failed to return for them.

At an adjudication hearing on June 24, 1998, Tonya was represented by counsel, but Tonya herself did not appear. Following the receipt of evidence, the juvenile court found that placement of the children in Tonya's home at that time would be contrary to the health, safety, or welfare of the children. The court found that the children came within the meaning of § 43-247(3)(a), being under the age of 18 years and lacking proper parental care by reason of the faults or habits of Tonya in that on or about March 19, Tonya left three of the children with Jane Holm, promising to return for them that afternoon, and that on or about March 19, two of the children were found home alone. The children were placed in protective custody on March 20 after the Omaha Police Division was notified that Tonya had not returned for them. The evidence showed that on or about March 22, Tonya's home was observed to be in a filthy, unwholesome condition. In addition, the court noted that as of April 27, Tonya had failed to contact anyone regarding the children.

The juvenile court concluded that the children were at risk for harm and that the children should remain in the temporary custody of the Nebraska Department of Health and Human Services (Department) for appropriate care and placement. The matter was then set for a dispositional hearing.

At a dispositional hearing on August 27, 1998, the juvenile court found that placement of the children in Tonya's home at that time would be contrary to the health, safety, or welfare of the children and that reasonable efforts had been made to preserve and reunify the family, but had not made reunification possible. The court found that it was in the best interests and welfare of the children that they remain in the custody of the Department for appropriate care and placement.

In addition, the juvenile court ordered Tonya to undergo a psychological examination, a parenting and chemical dependency evaluation, and a bonding assessment; to pay $25 to the clerk of the district court by August 31, 1998, as restitution for drug screening costs; and to pay the same amount each month on the 15th day of the month until further order of the court. The court further ordered Tonya to contribute a sum in accordance

with the Nebraska Child Support Guidelines. This portion of the order was continued until a later date to be set by counsel. Tonya was also ordered to immediately inform her attorney, the Department, and the juvenile court administrator in writing of any change of address or telephone number. In addition, Tonya was ordered not to leave Douglas County without authorization of the court, and it was ordered that she have no rights of visitation with the children pending further order of the court.

On October 13, 1998, the State filed a supplemental petition, alleging that it was in the children's best interests to terminate Tonya's parental rights pursuant to Neb. Rev. Stat. § 43-292(1) (Reissue 1998) in that Tonya had abandoned the children. On October 28, the juvenile court continued the termination because Tonya could not be found. The court ordered that a diligent search be made for Tonya and that if she was not found, she would be notified of the termination by publication.

The record before us concerning Michael, the father of Lacie, is sparse. A hearing was held on December 9, 1998, in which the State presented evidence in support of its motion to terminate parental rights to all of the children. At this time, Michael appeared with counsel to contest termination of his parental rights based upon abandonment. Michael's motion for continuance was overruled, but his counsel was granted leave to present his defense at a later time.

The State then presented evidence against Tonya regarding the issue of abandonment. Michelle Hemphill, a case manager with the Department, testified that Tonya had failed to visit the children and had made only two telephone calls to the Department over a 7-month period. Hemphill testified that from March 20 to October 13, 1998, Tonya failed to contact the Department regarding the well-being of the children. In addition, between August 27 and October 13, Hemphill referred Tonya for a psychological evaluation and discussed the chemical dependency evaluation that had been ordered by the court. Tonya did not complete either evaluation. Hemphill was never able to address any of the issues of visitation or the recommended services because she was unable to locate Tonya. Hemphill testified that termination of Tonya's parental rights was in the children's best interests.

Linda Rider-Hunt, the children's therapist, testified that Tonya never made contact or visited with the children in the 6 months preceding the filing of the supplemental petition. She also testified that the children's emotional, physical, and psychological needs were being met by the foster parents and that these needs had not been met by Tonya either before or after the children were placed in protective custody.

Bob Owens, a risk assessment investigator for the Department who was assigned to the case on March 25, 1998, testified that Tonya had not kept any of their scheduled appointments. The only contact Tonya had with Owens was a telephone call to inquire whether she was "in trouble." Tonya told Owens she was fearful of being arrested by the police, and Owens stated that Tonya never inquired about the children's well-being and foster care.

On January 6, 1999, the juvenile court found by clear and convincing evidence that the children were within the meaning of § 43-292(1) and that it was in their best interests that Tonya's parental rights be terminated. The children were ordered to remain in the temporary custody of the Department for appropriate care and placement. At that time, the court continued the matter regarding Michael.

On February 9, 1999, the matter came on for adjudication of Lacie as to Michael. On February 10, the juvenile court took the matter of termination of Michael's parental rights under advisement. However, the record does not reflect the final disposition of Michael's parental rights. On December 20, this court issued an order to show cause because the transcript filed herein did not contain a final order which terminated Michael's parental rights. Michael was ordered to show cause on or before December 30 why this appeal should not be dismissed for lack of a final, appealable order. The record reflects no response to this order to show cause.

## ASSIGNMENTS OF ERROR

Tonya assigns as error that the juvenile court erred in terminating her parental rights under § 43-292(1) because the August 27, 1998, order prohibited her from having visitation with the children, thus tolling the 6-month statutory requirement for abandonment.

Michael assigns as error that the juvenile court erred in terminating his parental rights because there was insufficient evidence in the record to find that he had abandoned Lacie or that termination of his parental rights was in her best interests.

## ANALYSIS

We first consider Tonya's appeal. Tonya claims that the juvenile court erred in terminating her parental rights under § 43-292(1) because the order of August 27, 1998, denied her visitation with the children, thus tolling the 6-month statutory requirement for abandonment. The question presented is whether Tonya's parental rights may be terminated on the basis that she abandoned the children for 6 months immediately prior to the filing of the supplemental petition for termination of parental rights. The factual situation is unique because the juvenile court entered an order which denied Tonya visitation with the children approximately 7 weeks before the supplemental petition was filed.

Section 43-292 provides in pertinent part:

The court may terminate all parental rights between the parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:

(1) The parents have abandoned the juvenile for six months or more immediately prior to the filing of the petition.

For purposes of § 43-292(1), "abandonment" is a parent's intentionally withholding from a child, without just cause or excuse, the parent's presence, care, love, protection, maintenance, and the opportunity for the display of parental affection for the child. *In re Interest of Sunshine A. et al.*, 258 Neb. 148, 602 N.W.2d 452 (1999). The question of abandonment is largely one of intent, to be determined in each case from all the facts and circumstances. *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992).

The State claims that Tonya abandoned her children for a 7-month period prior to the filing of the supplemental petition in that from March 20 until August 27, 1998, Tonya did not visit

the children or contact the Department regarding the well-being of the children. The State contends that Tonya had no excuse for why she left for 5½ months or why she failed to attempt any contact with her children for an additional 2 months. The State claims the August 27 order which denied visitation did not toll the running of the 6 months because there were other ways Tonya could have proved her intent to parent.

In support of her contention that the August 27, 1998, order tolled the 6-month statutory requirement for abandonment, Tonya relies upon *In re Interest of B.J.M. et al.*, 1 Neb. App. 851, 510 N.W.2d 418 (1993). There, the father of four children was ordered on May 1, 1992, to have no visitation with his children. On July 9, the State filed a petition to terminate parental rights based upon abandonment. On September 15, the juvenile court concluded that the father had abandoned the children and that termination was in the best interests of the children. The Nebraska Court of Appeals reversed, concluding that the record showed a systematically created series of impediments which prevented the father from successfully developing a relationship with the children. During the 6 months immediately preceding the filing of the petition, the father was kept at bay by the then Department of Social Services (DSS) and then by court order.

The present case is readily distinguishable from *In re Interest of B.J.M. et al.* There, during the 6-month period preceding the filing of the petition for termination, the father had renewed his interest in the children, had successfully completed a drug counseling program, and had remarried and taken an active and positive interest in his wife's child. The father and his second wife had reestablished ties with the four children, worked with DSS to set up visitation, and persisted in their efforts to arrange visitation. Although these efforts were met with a motion to limit visitation, the father persisted in his efforts, responded to a questionnaire by DSS, moved to Nebraska, acquired a Nebraska probation officer, and was gainfully employed. Based upon the record before it, the Court of Appeals concluded that at the time of the termination, the father had demonstrated his intent during the requisite period to participate in the children's lives and that his efforts were genuine.

The court found that the failure of the father to connect with his children during the requisite period was due to just cause and excuse, and not indifference.

Whether a parent has abandoned a child within the meaning of § 43-292(1) is a question of fact and depends upon parental intent, which may be determined by circumstantial evidence. *In re Interest of C.A.*, 235 Neb. 893, 457 N.W.2d 822 (1990). In an appeal from a juvenile court order terminating parental rights, an appellate court tries factual questions de novo on the record. Appellate review is independent of the juvenile court's findings; however, when the evidence is in conflict, the appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *In re Interest of Michael B. et al.*, 258 Neb. 545, 604 N.W.2d 405 (2000).

Parents have a positive duty to exhibit a continued interest in their children and a genuine effort to associate and maintain the lines of communication with those children. See *In re Interest of C.K., L.K., and G.K.*, 240 Neb. 700, 484 N.W.2d 68 (1992). In *In re Interest of C.A.*, we noted that the mother's actions during the 6 months preceding the State's motion to terminate could not be viewed in total isolation from the mother's previous conduct and absence from the child, especially since DSS' refusal to allow the mother to see the child was the result of the mother's indifference to the child's well-being.

We conclude that the juvenile court's order of August 27, 1998, which prohibited Tonya from visiting the children, did not toll the 6-month period for purposes of abandonment. The State established that Tonya never visited the children and did not provide any financial support, nor did she send them cards, gifts, or letters other than one birthday card which was brought to the Department on September 3. From March 20 until August 27, Tonya had no contact of any kind with the children. From August 27 until October 13, she had no contact with the Department concerning the welfare of the children. After August 27, the Department received two telephone calls from Tonya in regard to a psychological evaluation and a chemical dependency evaluation. Tonya made no inquiry as to how the children were doing in foster care, nor did she ask about their well-being. She did not bring up any of the children in the telephone conversa-

tions other than to inquire about the birthday card. In addition, nothing was sent to the foster home by Tonya.

From our de novo review of the record, we conclude that Tonya has not presented any evidence which would show a continuing interest in the children or a genuine effort to maintain communication and a meaningful relationship with these children. There is clear and convincing evidence that Tonya has abandoned these children. There is also clear and convincing evidence that the best interests of the children require that Tonya's parental rights be terminated.

For the reasons stated herein, the judgment of the separate juvenile court of Douglas County terminating Tonya's parental rights is affirmed.

We next address Michael's appeal. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *US Ecology v. State*, 258 Neb. 10, 601 N.W.2d 775 (1999). In the absence of a judgment or order finally disposing of a case, an appellate court is without jurisdiction to act and must dismiss the purported appeal. *In re Application of SID No. 384*, 256 Neb. 299, 589 N.W.2d 542 (1999).

The order which terminated Michael's parental rights does not appear in the record. Since we are without a final, appealable order, we are without jurisdiction to consider this appeal. Thus, Michael's appeal is hereby dismissed.

JUDGMENT IN NO. S-99-141 AFFIRMED.
APPEAL IN NO. S-99-351 DISMISSED.

GERRARD, J., concurring in part, and in part dissenting.

I dissent with reference to the termination of Tonya's parental rights. Even though the record suggests that the mother, Tonya, may (1) have repeatedly neglected and refused to give her children necessary parental care and protection, Neb. Rev. Stat. § 43-292(2) (Reissue 1998); (2) have failed to complete the psychological and court-ordered chemical dependency evaluations and failed to correct the conditions leading to the § 43-247(3)(a) determination, § 43-292(6); and (3) be unfit as a parent by reason of habitual use of intoxicating liquor or narcotic drugs, § 43-292(4), the State did not pursue termination of the mother's parental rights under any of these grounds. Instead, the sole

ground for termination of the mother's parental rights, as set forth in the October 13, 1998, "Supplemental Petition," was that Tonya abandoned her children "for six months or more immediately prior to the filing" of the supplemental petition. See § 43-292(1).

Thus, the State set out to prove that the mother abandoned her children for a period of 6 months or more immediately prior to October 13, 1998. The most obvious problem with the State's theory is that on August 27, 1998, the mother was granted "no rights of visitation with [her] children pending further order" of the juvenile court. No further rights of visitation were granted to the mother by the juvenile court between August 27 and October 13.

For the purposes of § 43-292(1), "abandonment" is a parent's intentionally withholding from a child, *without just cause or excuse*, the parent's presence, care, love, protection, maintenance, and the opportunity for the display of parental affection for the child. *In re Interest of Sunshine A. et al.*, 258 Neb. 148, 602 N.W.2d 452 (1999). We are starting down a dangerous and slippery slope if we countenance the practice of the State seeking a "no contact" or "no visitation" order from the juvenile court and then later claiming that the parent *intentionally withheld* from his or her child the parent's *presence, care,* love, protection, maintenance, and *the opportunity for the display of parental affection for the child* during the time that the order is in effect.

It is fundamentally unfair, and a violation of the parent's due process rights, to allow the termination of one's parental rights on the *sole basis* of abandonment when utilizing portions of time that a parent has been court ordered to have no contact or "no visitation" with his or her children. I agree with the majority that from March 20 until August 27, 1998, Tonya had no contact of any kind with her children. I also acknowledge that from August 27 until October 13, 1998, Tonya's only contact with her children was the delivery of one birthday card to the Department on September 3. In light of the "no visitation" order, however, I am not willing to say that from August 27 until October 13, this mother had a fair opportunity to display her presence, care, love, protection, and parental affection for her children. See *In re Interest of Sunshine A. et al., supra.* Therefore, I disagree with

the majority's conclusion that the State proved by clear and convincing evidence that Tonya abandoned her children for 6 months or more immediately prior to the filing of the supplemental petition in this case.

That is not to say the record demonstrates that Tonya is a fit parent or, as noted in my first paragraph, that the continuation of Tonya's parental rights is in the best interests of her children. Nor am I suggesting that it is in any way improper for a juvenile court to utilize a "no visitation" order when the best interests of the children are served by such an order. What I am asserting is that it is fundamentally unfair under the Due Process Clause of both the federal and the state Constitutions to allow the machinery of the State to impede visitation between a parent and child and then to allow the termination of parental rights on the *sole basis* of abandonment, utilizing evidence from the period of time that the parent was court ordered to have "no visitation" with his or her children.

Therefore, I would reverse the January 6, 1999, order of the juvenile court which terminated the parental rights of Tonya on the sole basis of abandonment and remand this cause for further proceedings. It should be noted that I concur in that portion of the majority's judgment dismissing Michael's appeal in case No. S-99-351.

HENDRY, C.J., and STEPHAN, J., join in this concurrence and dissent.