STUART, Justice
(dissenting).
I respectfully dissent. The termination of an individual’s parental rights is a serious matter, but one properly entrusted to the judgment of juvenile court judges who are experienced in such matters and who are best equipped to hear ore tenus evidence and to determine whether the statutory requirements for termination have been met and whether it is in the best interest of the child that the rights of the parent be terminated.
As I stated in my dissent in Ex parte T.V, 971 So.2d 1, 11-12 (Ala.2007) (Stuart, J., dissenting):
“The ‘best interest of the child’ is always of paramount importance in cases involving child custody and the termination of parental rights. In making such a determination the court or the agency determining the best interest of the child must give great weight to the stability, security, and permanency of the relationship between the child and the child’s caregiver. As the Nebraska Supreme Court has held:
“ ‘[Wjhere a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of parental rights. In re Interest of Joshua M. et al., 251 Neb. 614, 558 N.W.2d 548 (1997).... The concept of permanency is not simply a *1232 “buzzword”, as [the mother] contends, but, rather, a recognition that when there is no reasonable expectation that a natural parent will fulfill his or her responsibility to a child, the child should be given an opportunity to live with an adult who has demonstrated a willingness and ability to assume that responsibility and has a permanent legal obligation to do so.’
“In re Sunshine A., 258 Neb. 148, 158, 602 N.W.2d 452, 460 (1999).”
In this case, the majority in effect reverses the juvenile court’s decision to terminate the mother’s parental rights to the child because, it concludes, termination of the mother’s parental rights is “premature.” 73 So.3d at 1230. The facts establish that the mother is presently in prison serving sentences for felony offenses. She presented evidence indicating that her earliest release date is September 2011 (16 months from the date of the termination-of-parental-rights order, May 3, 2010) and her “long date” for release is December 2016. This is not the mother’s first period of incarceration. In fact this child was born in 2007 while the mother was in prison for felony offenses. The mother has a lengthy criminal record. She has previously been released early from a sentence of incarceration and been placed on probation. She subsequently had that probation revoked. For this Court to assume that the mother will be released in September 2011, that she will not violate probation, parole, or early-release conditions so as to be reincarcerated, or that she will not re-offend and commence a new period of incarceration is mere speculation. The child apparently has lived with the grandmother, who now seeks to adopt the child, her entire life. The juvenile court’s order is supported by clear and convincing evidence, and its decision to terminate the mother’s parental rights is certainly not “premature.”
Further, the mother does not oppose the grandmother’s adopting the child. She simply does not want her parental rights terminated, which apparently means she just wants to be able to visit the child. There is no indication that the mother wants to or is capable of assuming responsibility for caring for the child.
The juvenile court’s order is supported by clear and convincing evidence, and it is not plainly and palpably wrong. This child deserves permanence and to remain with the person who has cared for her her entire life, the grandmother. The affir-mance by the Court of Civil Appeals of the juvenile court’s order is due to be affirmed.
WISE, J., concurs.