IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

IN RE INTEREST OF LYNDEL W.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF LYNDEL W., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE,

V.

ISAIAH W., APPELLANT, AND VERSI W.,
APPELLEE AND CROSS-APPELLANT.

Filed October 6, 2020.    No. A-19-1130.

Appeal from the Separate Juvenile Court of Douglas County: CHRISTOPHER E. KELLY, Judge. Affirmed.

Darren J. Pekny, of Johnson & Pekny, L.L.C., for appellant.

Anthony M. Hernandez, Deputy Douglas County Attorney, and Mark T. Shimizu and Alexander T. Kelly, Senior Certified Law Students, for appellee State of Nebraska.

Paul Muia, of Law Offices of Paul Muia, Esq., for appellee Versi W.

MOORE, Chief Judge, and BISHOP and WELCH, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Isaiah W. appeals and Versi W. cross-appeals from the decision of the separate juvenile court of Douglas County terminating their parental rights to their son, Lyndel W. For the following reasons, we affirm.

- 1 -

## II. BACKGROUND

### 1. PROCEDURAL BACKGROUND

On June 30, 2019, Versi brought her 9-month old son, Lyndel, to the emergency room (ER) at Children's Hospital in Omaha. Doctors at the emergency room discovered that Lyndel was experiencing a stellate skull fracture, bruising on his back, edema, and vomiting. The emergency room doctors believed that the skull fracture was consistent with impact and blunt force trauma, which is indicative of abusive head trauma. Versi told doctors that Lyndel was having an allergic reaction to fruit and did not have a plausible reason for Lyndel's head trauma. Police officers were called to the emergency room and met with Versi and her husband, Isaiah. Upon questioning, Versi told officers that Lyndel hit his head on an end table the day prior. Isaiah told officers that Lyndel had fallen into the wall and hit his head on the crib rail the day prior.

On July 1, 2019, the State filed a petition alleging Lyndel was a minor child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) because he lacked proper parental care by reason of the fault or habits of Versi. The petition alleged that on June 30, Lyndel presented to the hospital ER and was subsequently diagnosed with injuries indicative of nonaccidental trauma; that Versi admitted to having care, custody and control of Lyndel the day he went to the emeregency room; that Versi did not provide a satisfactory explanation for the injuries; that Versi has failed to provide proper care, support and/or supervision of Lyndel; and that due to these allegations, Lyndel is at risk for harm. A supplemental petition was also filed on July 1, containing the same allegations with respect to Isaiah. The State also filed ex parte motions for immediate custody of Lyndel, with placement to exclude the home of Versi and Isaiah. In support of the ex parte motions, the State attached an affidavit which summarized the above events. The court ordered that Lyndel be placed in the temporary custody of the Nebraska Department of Health and Human Services (DHHS).

On July 9, 2019, a protective custody detention hearing was held and the juvenile court ordered agency-supervised visitation in a neutral location, only after an existing police hold is ended. On August 15, the State filed an amended petition and termination of parental rights, containing the same allegations as in the original petition, as well as alleging that Lyndel came within the meaning of Neb. Rev. Stat. § 43-292(2), (9), and 10(d) (Reissue 2016) and that it was in Lyndel's best interests to terminate the parental rights of both Versi and Isaiah. Within the supplemental petition, the State also alleged that reasonable efforts were not required under Neb. Rev. Stat. § 43-283.01 (Cum. Supp. 2018) because Versi and Isaiah committed felony assault that resulted in serious bodily injury to Lyndel or another child, or has subjected Lyndel to aggravated circumstances.

On October 24, 2019, trial was held and the following evidence was heard.

### 2. ADJUDICATION AND TERMINATION HEARING

#### (a) Dr. Suzanne Haney

The State first called Dr. Suzanne Haney, who is employed at Children's Hospital as a child abuse pediatrician. Dr. Haney testified that she saw Lyndel on July 1 and 19, 2019. At the time she first attended to Lyndel, she was told he was brought to the ER due to swelling of the head and allergy concerns. Dr. Haney performed an assessment of Lyndel during a physical

examination, where she noted that there was significant swelling and bruising on the left side of his head, and a U-shaped bruise on the middle of his back, right below the neck. Dr. Haney estimated that Lyndel's injuries occurred recently. Dr. Haney also reviewed a CT scan of Lyndel's head, a skeletal survey, lab tests, and an eye exam. She concluded that Lyndel was suffering from a stellate skull fracture on the left side of his head, with bruising, swelling, and extra-axial bleeding. Dr. Haney further explained that blood on the brain is most commonly caused by trauma, and the type of fracture on Lyndel's skull is a type of fracture only seen after high force impacts. Dr. Haney testified that typically, children who fall from furniture suffer from a single line fracture, rather than a stellate fracture like Lyndel's.

Dr. Haney testified that she used a differential diagnosis process to work through the possible causes of Lyndel's injuries by ruling out causes based on her assessment. In this case, Dr. Haney testified that the CT scan ruled out the parents' explanation of an allergic reaction and that there was no history of significant trauma or falls, and thus the only possibility was abuse.

### (b) Abigail Villegas-Hernandez

Abigail Villegas-Hernandez is Isaiah's ex-girlfriend and the mother of Isaiah's daughter. Abigail testified that her daughter had unexplained injuries after Isaiah was watching her the night before. Abigail testified that Isaiah told her to tell the doctors that her daughter fell if anything was wrong with her. Abigail and Isaiah's daughter was admitted to the hospital and diagnosed with multiple injuries, including breaks in both of her legs.

Abigail also testified that domestic violence occurred during her relationship with Isaiah, including mental, verbal, physical, and sexual abuse. Abigail filed a petition and affidavit to obtain a domestic abuse protection order, which was offered into evidence. Isaiah's parental rights to his daughter were terminated in September 2018. Isaiah had also been incarcerated for over a year in the criminal case involving sexual assault of Abigail.

### (c) Detective Makayla Stiles

Makayla Stiles is a detective in the child victim sexual assault unit for the Omaha Police Department. On June 30, 2019, Detective Stiles began an investigation regarding Lyndel's injuries after he was brought into the ER. Detective Stiles spoke to the doctors who attended to Lyndel, a police officer who was at the hospital, and Versi in conducting her investigation. She also looked for past Child Protective Services information on both Versi and Isaiah to serve as a factor in determining whether Lyndel would be at a risk for harm if left in his parents' care.

Detective Stiles testified that Versi's mannerisms were extremely emotionless, that she was "unphased," and she would not accept that the injury was unlikely to be caused by allergies. Detective Stiles determined that Lyndel would be at risk for harm if left in his parents' care, and thus was placed in protective care. When Detective Stiles informed Versi and Isaiah that she was placing Lyndel in protective custody, neither parent was willing to separate from the other spouse to protect Lyndel.

### (d) Trae'a Bowden

Trae'a Bowden, an assessment worker for DHHS, testified that she received an emergency intake for Lyndel on June 30, 2019, requiring her to meet with the child within 24 hours. Bowden

went to the ER to meet with the medical staff, but did not meet with Versi or Isaiah. Bowden was able to talk with Versi and Isaiah over the phone 2 days later. Bowden testified she was unable to opine whether the child was at risk for harm, but the cause of her concern was Lyndel's skull fracture.

### (e) Megan Miller

Megan Miller, a family permanency specialist at PromiseShip, was assigned to Lyndel's case in July 2019. Miller opined that Lyndel would be at risk for harm if left in Versi and Isaiah's care, and it was in Lyndel's best interests to terminate both Versi and Isaiah's parental rights. Miller stated that this opinion was based on Lyndel's severe, unexplained injuries and his parents' unwillingness to address the safety concerns.

### (f) Gary Conyers

Versi called her father, Gary Conyers, to testify. Gary testified that based on his observations from living with Versi, he did not believe that Versi would hurt Lyndel. He also testified that he did not believe Isaiah caused Lyndel's injuries. However, Gary also testified that he had never talked to Versi or Isaiah about what happened to Lyndel to cause his injuries.

### (g) Robin Conyers

Versi also called her mother, Robin Conyers, who testified that Versi and Isaiah had properly cared for Lyndel since his birth. Further, Robin testified that she had never seen Isaiah lose his temper with Lyndel. Robin described the relationship between Lyndel and his parents as very loving.

### (h) Termination

After the termination hearing, the juvenile court issued an order terminating the rights of both Versi and Isaiah to Lyndel. In its order, the juvenile court found that Lyndel was admitted to the hospital with significant injuries which were diagnosed as the result of child abuse because the parents could not give viable reasons for the injuries, and specifically that Versi did not seem concerned about Lyndel's injuries. It also found that Isaiah was involved in a prior case with "remarkable similarities" in which a child was seriously injured in Isaiah's care, and Isaiah's parental rights were subsequently terminated to that child. The court also found that Detective Stiles and Megan Miller both opined Lyndel would be at risk for harm if left in his parents' care. Based on these findings, the juvenile court terminated Isaiah's parental rights under § 43-292(2), (9), and (10) and terminated Versi's parental rights under § 43-292(2) and (9), finding that termination was in Lyndel's best interests. Both Versi and Isaiah appeal the termination.

## III. ASSIGNMENTS OF ERROR

Isaiah assigns that the juvenile court erred in finding: (1) that no reasonable efforts were required pursuant to § 43-283.01; (2) that there was clear and convincing evidence to terminate Isaiah's parental rights to Lyndel pursuant to § 43-292(2), (9), and (10)(d), and; (3) that terminating Isaiah's parental rights was in the best interests of Lyndel.

On her cross-appeal, Versi assigns that the juvenile court erred in finding: (1) that there was clear and convincing evidence to terminate Isaiah's parental rights to Lyndel pursuant to

§ 43-292(2) and (9), and; (2) that terminating Versi's parental rights was in the best interests of Lyndel.

## IV. STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Taeson D.*, 305 Neb. 279, 939 N.W.2d 832 (2020). The meaning of a statute is a question of law, which an appellate court resolves independently of the trial court. *In re Interest of Vladimir G.*, 306 Neb. 127, 944 N.W.2d 309 (2020).

## V. ANALYSIS

### 1. ISAIAH'S APPEAL

#### (a) Reasonable Efforts

Isaiah first asserts that the juvenile court erred in finding that reasonable efforts at reunification were not required because Isaiah subjected Lyndel to aggravated circumstances.

Section 43-283.01 provides:

(4) Reasonable efforts to preserve and reunify the family are not required if a court of competent jurisdiction has determined that:

(a) The parent of the juvenile has subjected the juvenile or another minor child to aggravated circumstances, including, but not limited to, abandonment, torture, chronic abuse, or sexual abuse.

However, we need not address this assigned error. Reasonable efforts to reunify a family are not required unless termination of parental rights is sought under § 43-292(6). See *In re Interest of Hope L. et al.*, 278 Neb. 869, 775 N.W.2d 384 (2009). Here, termination was only sought under § 43-292(2), (9), and (10) as to Isaiah.

#### (b) Statutory Grounds

In order to terminate parental rights, a court must find by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that the termination is in the child's best interests. *In re Interest of Alec S.*, 294 Neb. 784, 884 N.W.2d 701 (2016).

In its order terminating Isaiah's parental rights to Lyndel, the juvenile court found that statutory grounds existed pursuant to § 43-292(2) (substantial and continuous or repeated neglect of juvenile or a sibling) and (9) (juvenile or another minor child subjected to aggravated circumstances) and also found statutory grounds existed pursuant to § 43-292(10)(d) (felony assault resulting in serious bodily injury to juvenile or another minor child of parent.

#### *(i) § 43-292(9)*

Pursuant to § 43-292(9), the court may terminate parental rights when the court finds that the parent of the juvenile has subjected the juvenile or another minor child to aggravated circumstances, including, but not limited to, abandonment, torture, chronic abuse, or sexual abuse.

Whether aggravated circumstances exist is determined on a case-by-case basis. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). The Legislature has not defined in the

juvenile code the phrase "aggravated circumstances," but the Nebraska Supreme Court has cited with approval the New Jersey Superior Court, which stated that "'where the circumstances created by the parent's conduct create an unacceptably high risk to the health, safety and welfare of the child, they are "aggravated" . . . .'" *In re Interest of Jac'Quez N.*, 266 Neb. 782, 791, 669 N.W.2d 429, 436 (2003), quoting *New Jersey Div. v. A.R.G.*, 361 N.J. Super. 46, 824 A.2d 213 (2003).

The Nebraska Supreme Court has determined that aggravated circumstances exist when a child suffers severe, intentional physical abuse. See *In re Interest of Ryder J., supra* (father subjected son's half-brother from mother's previous relationship to "aggravated circumstance" under § 43-292(9) when he subjected half-brother to severe, intentional physical abuse, even though half-brother suffered no permanent injury or disability; half-brother had bruising, swelling, and abrasion to his genitals and surrounding area, petechial hemorrhaging across his face, significant bruises on several areas of his body, and a hemorrhage in his right eye).

Upon our review, clear and convincing evidence shows that Isaiah subjected Lyndel to aggravated circumstances. First, Dr. Haney explained that Lyndel's injuries were the type usually created by high force velocity impacts, and both Isaiah and Versi were unable to give a medically reasonable explanation for those injuries despite Lyndel being in their care at the time he sustained the injuries. Further, Isaiah's daughter had previously been injured after being left alone with Isaiah, and he instructed Abigail to tell medical personnel that his daughter fell. Isaiah then gave the same reasoning for Lyndel's injury to medical personnel. Although Miller and Bowden both testified that they did not have safety concerns aside from Lyndel's injuries, the severe nature of Lyndel's injuries combined with the past injuries to Isaiah's other child are clearly sufficient to show Lyndel was subjected to aggravated circumstances.

The juvenile court did not err in finding clear and convincing evidence that Isaiah subjected Lyndel to "aggravated circumstances" under § 43-292(9).

### (ii) § 43-292(2) and (10)

We need not consider whether termination of Isaiah's parental rights was proper pursuant to § 43-292(2) and (10) since any one of the 11 grounds identified in § 43-292 can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. See *In re Interest of Elizabeth S.*, 282 Neb. 1015, 809 N.W.2d 495 (2012). Thus, the next inquiry is whether termination of Isaiah's parental rights was in Lyndel's best interests.

### (c) Best Interests

In addition to proving a statutory ground, it must be shown that termination is in the best interests of the child. See *In re Interest of Austin G.*, 24 Neb. App. 773, 898 N.W.2d 385 (2017). A child's best interests are presumed to be served by having a relationship with his or her parent. *In re Interest of Alec S.*, 294 Neb. 784, 884 N.W.2d 701 (2016). Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when it has been proven that the parent is unfit. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015).

The term "unfitness" is not expressly used in § 43-292, but the concept is generally encompassed by the fault and neglect subsections of that statute, and also through a determination of the children's best interests. *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014).

Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's well-being. *Id.* The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *Id.* And while both are separate inquiries, each examines essentially the same underlying facts as the other. *Id.* Furthermore, children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Sunshine A. et al.*, 258 Neb. 148, 602 N.W.2d 452 (1999).

Although Isaiah was not criminally charged with abuse in regards to Lyndel's injuries, his inability to provide a reasonable explanation for the severe injuries calls into question the safety of Lyndel remaining in Isaiah's care. Where parents are unable to provide reasonable explanation for a child's severe injuries, returning the child to their parents' care would create an unacceptable risk to their safety and well-being. See *In re Interest of Gavin S. & Jordan S.*, 23 Neb. App. 401, 873 N.W.2d 1 (2015). Further, Isaiah's inability to admit to any deficiency and unwillingness to answer questions would have made offering rehabilitative services a wasted effort. The juvenile court found that it was in Lyndel's best interests to terminate Isaiah's parental rights, rather than allowing Lyndel to wait indefinitely in foster care for Isaiah to reach the requisite level of parental maturity.

The Nebraska Supreme Court has stated, "[I]n our view, the abuse of *any* child by an adult--regardless of whether it is the adult's own child or the child of another--calls that adult's ability to parent into serious question." *In re Interest of Ryder J.*, 283 Neb. 318, 327, 809 N.W.2d 255, 262 (2012). "We need not wait for a disaster to strike before taking protective steps in the interests of a minor child." *Id.* See, also, *In re Interest of Gavin S. & Jordan S.*, 23 Neb. App. 401, 873 N.W.2d 1 (2015). Although Isaiah was not charged with child abuse in the 2014 case involving his daughter, disturbingly similar circumstances occurred, resulting in injuries to both children. As a result of the injuries sustained to his daughter, Isaiah's parental rights to his daughter were terminated. While Lyndel has since recovered from his injuries, the pattern of children being injured in Isaiah's care further indicates it would be in Lyndel's best interests to terminate Isaiah's parental rights. Thus, we find the juvenile court did not err in finding that it was in Lyndel's best interests to terminate Isaiah's parental rights.

## 2. VERSI'S CROSS-APPEAL

### (a) Statutory Grounds

In its order terminating Versi's parental rights to Lyndel, the juvenile court found that statutory grounds existed pursuant to § 43-292(2) (substantial and continuous or repeated neglect of juvenile or a sibling) and (9) (juvenile or another minor child subjected to aggravated circumstances).

### (i) § 43-292(2)

Pursuant to § 43-292(2), the court may terminate the parental rights of the parent when the court finds that the parent has substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary prenatal care and protections.

Versi was aware of Isaiah's abusive history and the injuries which occurred to Lyndel in Isaiah's care. Nevertheless, Versi indicated that she had no intention to divorce Isaiah or move out

of their shared home. In addition, Versi was unable to give a viable explanation for Lyndel's injuries and declined to believe that the injuries were caused by Isaiah. Clearly, under these circumstances, the record supports a finding that Versi is unable to protect Lyndel from harm and that he cannot safely be placed back in the family home. A parent's failure to provide an environment to which his or her children can return can establish substantial, continual, and repeated neglect. *In re Interest of Joseph S. et al.*, 291 Neb. 953, 870 N.W.2d 141 (2015). Versi's failure to provide an environment where Lyndel can return constitutes substantial, continual, and repeated neglect. For these reasons, the juvenile court correctly found by clear and convincing evidence supported termination of Versi's parental rights under § 43-292(2).

### (ii) § 43-292(9)

We need not consider whether termination of parental rights was proper pursuant to § 43-292(9) since any one of the 11 grounds identified in § 43-292 can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. See *In re Interest of Elizabeth S.*, 282 Neb. 1015, 809 N.W.2d 495 (2012). Thus, the next inquiry is whether termination of Versi's parental rights was in Lyndel's best interests.

### (b) Best Interests

As we discussed more thoroughly above, it must be shown that termination is in the best interests of the child. Although Versi was not criminally charged with abuse in regards to Lyndel's injuries, her inability to provide a reasonable explanation for the severe injuries call into question the safety of Lyndel remaining in Versi's care. See *In re Interest of Gavin S. & Jordan S., supra*. Further, Versi's inability to admit to any deficiency and unwillingness to answer questions would have made offering rehabilitative services a wasted effort. The juvenile court found that it was in Lyndel's best interests to terminate Versi's parental rights, rather than allowing Lyndel to wait indefinitely in foster care for Versi to reach the requisite level of parental maturity.

Versi suggests in her brief that the injuries to Lyndel may have occurred when he was alone with Isaiah and, thus, were not caused by her. Versi admitted to Megan Miller that she was aware of Isaiah's abusive history with his older daughter and her mother. However, Versi stated she had no intention to divorce Isaiah or move out of their shared home. This calls into serious question Versi's ability to protect Lyndel from future harm. It would be contrary to Lyndel's best interests to allow him to be placed in an environment where there is an unreasonably high risk to be severely injured and abused. For these reasons, we hold that the juvenile court did not err in finding that it was in Lyndel's best interests to terminate Versi's parental rights.

### VI. CONCLUSION

For the reasons stated above, we affirm the order of the juvenile court terminating Isaiah's and Versi's parental rights to Lyndel.

AFFIRMED.