# Wood *v.* Adams.

By the act of July 14, 1854, a clergyman or magistrate is not required to receive more than a single certificate from a single town-clerk, of the entry of the intention of marriage by parties, in order to protect himself against prosecution, whether those parties reside in the same or different towns; and he is not responsible for the correctness of the facts set forth in such certificate.

If the certificate received by him be genuine, and specify the date of the entry of the notice of intention of marriage between the parties in the office of the clerk issuing it, the requirements of the statute are complied with.

Wood *v.* Adams.

The principal, if not the sole object of the provisions of the statute of July 14, 1854, in relation to the entry of the notice of intention of marriage between parties, being to secure within the State an authentic record of the names, residences and ages of the citizens of this State contracting matrimony, whether, in any case, such entry is required by that statute to be made save in the office of a single town or city-clerk, *quære?*

DEBT for a penalty on sec. 5, chap. 1518, statutes of 1854.

The declaration alleged that the defendant, a minister of the gospel, unlawfully joined in marriage one Parker Coombs and one Jane P. Wood, who was the plaintiff's daughter; said Coombs and Jane being both residents of Rindge, in said county, which had a town-clerk, no certificate of intention of marriage by said town-clerk having been received by the defendant.

It appeared that the alleged marriage was solemnized by the defendant, as alleged, on the twenty-eighth day of May, 1855, and that a certificate of the town-clerk of Jaffrey, in said county, was received by the defendant, and no other.

A copy of said certificate, marked A, makes a part of this case. The plaintiff proposed to prove that both parties to said marriage resided in said Rindge, the defendant contending that said Coombs resided in said Jaffrey.

The court ruled, 1. That the statute required but one certificate to be received by the minister, though the parties reside in different towns. 2. That this certificate, describing said Coombs as a resident of Jaffrey, is sufficient protection against this action. To these rulings the plaintiff excepted, and a verdict having been taken, by direction of the court, for the defendant, moved to set the same aside and for a new trial.

[A.] CERTIFICATE OF MARRIAGE,

Between Mr. Parker Coombs, of Jaffrey, N. H., aged 23 years, and Miss Jane Wood, of Rindge, N. H., aged 19 years.

The intention of marriage by the parties above named was duly registered by me, on the 28th day of May, 1855, in the records of the town of Jaffrey, according to law.

Dated at Jaffrey, this 28th day of May, A. D. 1855.

JOHN FOX, *Town-Clerk.*

*Pierce & Vose*, for the plaintiff.

The rulings of the court were incorrect. Sec. 1 of the act of June 14, 1854, Pamph. Laws 1415, clearly requires the notice of intention of marriage to be entered in the town-clerk's office, in each town in which the parties actually dwell, to be there recorded.

The 1st and 2d sections of this act were designed merely to substitute the filing of a notice of intention of marriage for the publication previously required, and to change the nature of the town-clerk's certificate accordingly. It was not the purpose of this act to dispense with the record evidence, in each town, of the intention of marriage, the importance of which becomes more and more evident as time advances, nor to weaken the obligations of all concerned, to secure the preservation of such evidence. On the contrary, save the chance that filing such intention may give notice to relatives and others, and enable them to interpose to prevent improvident marriages, a chance much diminished by dispensing with publication, the only assignable object of the law appears to be to preserve record evidence of the marriage. And this is as necessary in one town as in the other.

The act of February 15, 1791, sec. 3, (Laws, Ed. of 1830, page 172,) expressly requires the production of the certificate of the " clerk or clerks," and such undoubtedly would have been the language of the Rev. Stat., chap. 156, sec. 5, page 376, and of the act of 1854, above cited, had not the Rev. Stat., chap. 1, sec. 1, page 44, giving a construction to words importing either the singular or plural number, rendered the use of such tautological expressions unnecessary.

The 5th section of the act of 1854, is, upon the same principles, to be construed as requiring a certificate from the clerk of each town.

A town-clerk's certificate is not, by the statute, made evidence of residence of the parties, nor does any principle of law make it evidence, much less conclusive evidence of that fact.

The only penalty to insure the due execution of the law is im-

posed upon the minister or justice, and it is his duty to see that the certificates from the clerks of the towns where the parties actually reside are produced to him. Of this he may require unquestionable proof, and an error or his negligence in this respect can not excuse him. A different construction would defeat the main object of the law..

*Wheeler & Faulkner*, for the defendant.

1. Before the defendant proceeded to solemnize the marriage, a certificate from the town-clerk of Jaffrey, in due form of law, was delivered to him by the parties.

He had complied with the letter of the law, and this being a penal statute should not be extended by implication to cases not comprehended between the plain, direct terms of the law. It should be construed strictly, and in such manner as to give it no effect beyond its plain and obvious meaning. *Woodbury* v. *Thompson*, 3 N. H. 194 ; *Andrews* v. *United States*, 2 Story 202 ; *The State* v. *Solomons*, 3 Hill. S. C. R. 96.

2. The certificate of the town-clerk that Coombs was a resident of Jaffrey, was conclusive evidence of that fact in such a case as this. If the duty of investigating the residence of the parties is imposed upon either of the officers named, it is imposed upon the town-clerk in the first instance ; and it could not have been the intention of the legislature to create two tribunals to adjudicate on this matter, the decisions of one of which should be subject to be revised and reversed by the other.

FOWLER, J. Two questions arise upon the rulings of the presiding judge, in directing a verdict for the defendant in the court below. The first, whether a clergyman, who solemnizes the contract of marriage between parties resident in this State, is required to receive more than a single certificate of the entry of the intention of marriage between them, in order to protect himself against the penalty prescribed in the fifth section of the act of July 14, 1854 ; and the second, whether, if only a single certificate is required to be received by him, he is responsible for the

correctness of the facts set forth in that certificate, as to the residence of the parties intending marriage.

The first question is one of construction simply, and to be decided by the language of that section of the statute on which it arises.

Where the language of a statute is clear, direct and positive, leading to no absurd results, courts are to be governed by the obvious meaning and import of its terms, and are not to extend its operation because they suppose the legislature may have intended to provide a more extensive or more effectual remedy. *Ezekiel* v. *Dixon*, 3 Kelly (Geo.) 146.

Where the words of a statute, in their primary and natural, meaning, do not expressly embrace the case before the court, and there is nothing in the context to attach a different meaning to them, capable of expressly embracing it, the court can not extend the statute by construction to that case, unless it falls so clearly within the reasons of the enactment as to warrant the assumption that it was not specifically enumerated, only because it may have been deemed unnecessary to do so. *Hall* v. *Hall*, 2 Strobhart's Eq. 174.

It is only when a statute is ambiguous in its terms that the courts may rightfully exercise the power of controlling its language, so as to give effect to what they may suppose to have been the intention of the law-makers. *Bidwell* v. *Whittaker*, 1 Mann. (Mich.) 469.

The foregoing are general rules for the construction of all statutes, but those for the construction of penal statutes are far stricter. These latter are to be construed strictly, though not against the manifest intention of the legislature, or so as to involve an absurdity. They are not to be extended by their spirit or equity to other offences than those which are described, or clearly provided for in their terms. They are never to be extended by implication. Where there is such an ambiguity as to leave reasonable doubt of the meaning, the penalty is not to be inflicted. *Fowler & al.* v. *Tuttle*, 4 Foster 9; *Commonwealth* v. *Loring*, 8 Pick. 370; *Reed* v. *Davis*, 8 Pick. 514; *Melody* v.

*Reab*, 4 Mass. 471 ; *The Enterprise*, Paine 32 ; *Andrews* v. *United States*, 2 Story 202; *Hall* v. *State*, 20 Ohio 7 ; *Abbott* v. *Wood*, 9 Shepley 541.

It is true that courts are not to narrow the construction of penal statutes, but are to give effect, as near as may be, to the plain meaning of words ; and when these are doubtful, are to adopt the sense that best harmonizes with the context and the apparent policy and objects of the legislature. *Pike* v. *Jenkins*, 12 N. H. 255. Moreover, the rule requiring penal statutes to be construed strictly, means only that they are not to be so extended, by implication, beyond the legitimate import of the .words used in them, as to embrace cases or acts not clearly described by such words, so as to bring them within the prohibition or penalty of such statutes. *Rawson* v. *The State*, 19 Conn. 292.

Applying these obvious and well established rules of construction and interpretation to the section of the act of 1854, now under consideration, there seems to be no difficulty in disposing of the question involved in the first ruling of the court below. The language of that section is as follows : " If any minister or justice of the peace shall join any persons in marriage, without having first received a certificate of the town-clerk, as herein before provided, he shall forfeit for each offence sixty dollars, to the use of the parent, master or guardian of either of the parties, who shall first sue therefor."

The language of this section is clear, plain, simple, unambiguous, and susceptible of but one construction. The offence is explicitly and distinctly defined. It consists in "joining persons in marriage without first having received a certificate of the town-clerk, as herein before provided," and in nothing else. The thing essential to the offence, and by which alone the penalty is incurred, is the not having received " a certificate of the town-clerk." " A certificate" means *one* certificate, and can not be construed to mean any thing else. The words, " as herein before provided," relate to the character and contents of the certificate, as prescribed in a preceding section. On referring to that we

find that the certificate must specify the time when notice of the intention of marriage was entered with the town-clerk by the parties, and nothing more is to be stated in it. Section 2 is in these words :

" Such town-clerk shall deliver to the parties a certificate under his hand, specifying the time when notice of the intention of marriage was entered with him ; which certificate shall be delivered to the minister or magistrate who is to marry said parties before he shall proceed to solemnize the marriage ; and the fee of the town-clerk for making the record of such notice and issuing his certificate as aforesaid, shall be fifty cents, to be paid by the said parties."

The statute does not, except by what may perhaps be regarded as necessary implication, as *descriptio personarum,* require the names of the parties to be specified in the certificate, and neither their ages or residences are required to be set forth. The first section requires, that " all persons residing in this State, proposing to be joined in marriage, shall, before their marriage, cause notice of their intention, with the names, residences and ages of the parties, to be entered in the office of the town-clerk of the town in which they may respectively dwell ; and if there be no such town-clerk in the place of their residence, the like entry shall be made with the clerk of any adjoining town ; and the town-clerk shall record such notice in a book to be kept for that purpose." The notice of intention of marriage is to embrace a statement of the names, residences and ages of the parties, and the town-clerk is to record the whole, but his certificate is not required to contain any transcript or copy of the record, but only to specify the date of the entry of intention of marriage. Had the contents of the certificate not been prescribed, it might perhaps have been contended that it was to embrace the substance of the record ; but where the act undertakes to determine specifically what it shall contain, that enumeration is conclusive.

Whether it was the intention of the legislature, in cases where the parties lived in different towns, to require an entry of the

Wood *v.* Adams.

notice of intention of marriage with the clerks of both towns, is by no means clear from the language of the act itself, or the obvious purpose of the legislature in its enactment. It requires considerable ingenuity to construe the words, " in the office of the town-clerk of the town in which they may respectively dwell," to mean " in the offices of the town-clerks of the respective towns in which they may severally dwell ;" but such a construction might possibly be given, if essential to accomplish the objects aimed at by such a provision. But we see no sufficient reason why such a construction is necessary, and there are other portions of the act quite inconsistent with it. The provision in the first section, that, if there be no town-clerk in the place of the parties' residence, the entry may be made with the clerk of any adjoining town, shows that the principal thing aimed at was to secure a record somewhere of the notice and its accompanying facts, rather than to secure such record in any particular locality. So, also, the provisions of the third section of the act, in relation to parties married out of the State, requiring them to file a certificate or declaration of their marriage, including the facts required to be stated in the notice of intention of marriage, with the town-clerk of the town where either of them lived prior to their marriage, within seven days after their return to this State, under penalty of ten dollars, to be recovered to the use of any person who will sue for the same, would seem to show conclusively that the main if not the sole design of this portion of the act was to secure some authentic record, in this State, of the marriages of our citizens, and the attendant circumstances of age and residence.

Prior to 1854, the design and policy of the legislature seem to have been to give to the relatives and friends of the parties intending marriage, notice of their intentions. Hence, in the act of 1791, which remained in force till the adoption of the Revised Statutes, parties desiring to be joined in marriage were required to have their intention " published at three several public meeting days, or three Sabbath days, in the respective towns or places where the parties so desiring to be joined in marriage

dwell or reside, by the clerks of such towns or places ;" and to produce to the justice or minister desired to marry them, " a certificate of such publishment, under the hand of the clerk or clerks so publishing them." Laws of 1830, p. 172. So, by the Revised Statutes, all persons, resident in this State, proposing to be joined in marriage, were required to have " their intention published on three several public meeting days, in the respective towns where the parties dwell, by the clerks of such towns," and to produce to the minister or magistrate marrying them, a certificate from one at least of such clerks, of such publishment, before the marriage was solemnized. Revised Statutes, chap. 147, secs. 4, 5.

But the act of 1854, repealing the 4th and 5th sections of the 147th chapter of the Revised Statutes, seems to have abandoned entirely the policy of notice to relatives and òthers interested, and to have adopted instead thereof the simple purpose of securing somewhere, either before or after marriage, an authentic record of the names, ages and residences of those citizens of this State contracting matrimony. We are utterly unable to perceive why this purpose is not as well and as effectually accomplished by such record in a single town, where the parties live in different towns, as where they both live in the same town, or where there is no clerk in the place or places of their residence, or where they go out of the State, and, having been married there, return again to reside here. As long as the object aimed at by publishment was information to parties interested, it was proper and important that such notice should be given in the places of residence of both parties. When that object was abandoned, we can conceive of no advantage in requiring an entry of the intention of marriage in more than one office. To require more would seem to impose a burden upon the parties, without any possible advantage to themselves or to the public.

It is not, however, necessary for the decision of the case before us, to settle this question, and we have only referred to it, to show that there is nothing in the context or in apparent design of the legislature in the whole enactment calling upon us to give to the

language of the fifth section any other than the obvious and natural meaning, were it possible consistently with the well established rules of construction and the general tenor of authority so to do. But, as we have before remarked, the language of that section is simple, clear and unambiguous, admitting of only one construction, and that its primary, natural and obvious meaning. A single certificate only of a single town-clerk, is required, " specifying," in the language of the second section, " the time when notice of the intention of marriage was entered with him." That is all the terms of the act require; and, being explicit and unequivocal, they could not be extended by implication, even if the rest of the act and the evident intention of the legislature required it, which they most clearly do not.

The second question raised in the case, if we are correct in our view of the provisions of the second section of the act, as to what should be specified in the certificate, is virtually already disposed of. Even if it were made the duty of the clergyman or magistrate to examine and test the validity of the certificate, he could not be held responsible for the correctness of immaterial and unnecessary averments contained in it. If no statement of the residence of the parties is required to be inserted in it, he can not be subjected to a penalty because such residence is incorrectly stated.

But we think it entirely clear, on well settled principles, that if the certificate were required, as it most clearly is not, to set forth the residence of the parties proposing to be joined in marriage, the magistrate or minister could not be held accountable for any error therein, whether accidental or intentional. All he could be required in that case to do would be to see that the certificate was genuine, that it was from the clerk of the town where one of the parties was represented as residing, and that it was correct in point of form. Whether any of the facts stated in it were true or false, could not be a matter for him to adjudicate or determine. If it were genuine, and contained what the statute required, he would be protected by it in the performance of the duty which the statute authorizes him to discharge. Like

a ministerial officer in other cases, as in the service of process issuing from a court or magistrate having jurisdiction of the subject matter, he must be protected in joining the parties in marriage, whenever the certificate received by him was genuine, regular on its face, and did not disclose any irregularity or want of compliance with the provisions of the statute. *Saracool* v. *Boughton*, 5 Wendell 170 ; *Parker* v. *Walrood*, 16 Wendell 514 ; *Earl* v. *Camp*, 16 Wendell 562 ; *Pierson* v. *Gale*, 8 Vt. 512 ; *Beach* v. *Furman*, 9 Johnson 229 ; *Nichols* v. *Thomas*, 4 Mass. 432 ; *Portland Bank* v. *Stubbs*, 6 Mass. 422 ; *Albee* v. *Ward*, 8 Mass. 79 ; *Keneston* v. *Little*, 10 Foster 318 ; *Woods* v. *Davis*, 34 N. H. 328 ; *Blanchard* v. *Goss*, 2 N. H. 491.

Undoubtedly one leading purpose of the change in the law relating to marriages effected by the act of 1854, may have been the diminution and ultimate extinction of the practice of residents of this State going into other States to be married, by avoiding the publicity and subjection to criticism which resulted from the old law, requiring the intention of marriage to be published on three successive public meeting days. This was to be accomplished, as well by dispensing with the publication of bans, as by reducing the necessary interval between the filing of the notice of intention of marriage with the clerk, and the solemnization of the nuptials. Now it is self-evident, that if the certificate furnished were required to state the names, residences and ages of the respective parties, and the clergyman or magistrate, before solemnizing the marriage, were required to investigate and determine the correctness of the statement of these particulars, at the risk of a prosecution, instead of having reduced the period required to elapse between the publication of bans and the consummation of the marriage contract, and diminished the publicity and subjection to criticism incident thereto, the new law would practically, in many cases, have extended that period almost indefinitely, and have rendered necessary circumstances of inquiry and critical examination, vastly more objectionable to the delicate and sensitive, than any thing incident to the opera-

tion of the repealed statute. Besides, in probably a majority of that class of cases which the change in the law may have been designed to reach, it would be utterly impracticable for the clergyman or magistrate to satisfy himself of the correctness of the statements of the certificate, without incurring expenses entirely disproportionate to the compensation ordinarily incident to the performance of the marriage ceremony. To give, then, to the act the construction for which the plaintiff has contended, were such a construction possible consistently with the language of the law, would be to defeat entirely the intention of the legislature in the particular to which allusion has been made.

As we are of opinion that the ruling of the court below was correct, on both the points as to which exception was taken, there must be *Judgment upon the verdict.*