IN RE INTEREST OF GEORGINA V. & MANUEL V., JR.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. MANUEL V., SR., APPELLANT.
620 N.W. 2d 130

Filed December 12, 2000.    Nos. A-00-010, A-00-011.

Benjamin P. King, of Reed & King, for appellant.

Leonard G. Tabor, of Peters, Tabor, for appellee.

HANNON, SIEVERS, and MOORE, Judges.

HANNON, Judge.

## INTRODUCTION

The Scotts Bluff County Court, sitting as a juvenile court, terminated the parental rights of Manuel V., Sr. (the father), and Judy V. to their children, Georgina V. and Manuel V., Jr. (Manuel), pursuant to Neb. Rev. Stat. § 43-292(6) and (7) (Reissue 1998). The father alleges that the language of Neb. Rev. Stat. § 43-292.02 (Reissue 1998), which provides, inter alia, that when the State files or joins in a petition to terminate parental rights, it shall "concurrently identify, recruit, process, and approve a qualified family for an adoption of the juvenile," not only requires the State to comply with that direction, but that the State's compliance is a necessary element which must be proved in the applicable termination case. The father argues that since the State made no effort to prove it had complied with that direction, it failed to prove a prima facie case for termination. We conclude that § 43-292.02 was enacted to promote and accelerate adoption and that the said provision is a direction to the responsible State agency, but not a requirement for termination. The State has otherwise proved its case by clear and convincing evidence, and we therefore affirm.

## PROCEDURAL BACKGROUND

On September 23, 1993, and January 9, 1996, respectively, Georgina and Manuel were adjudicated as children within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993). The validity of the adjudication is not questioned. On June 22, 1999, the State filed two separate motions to terminate the father's parental rights to Georgina and Manuel pursuant to § 43-292. Both motions alleged facts justifying termination under § 43-292(6) and (7). The cases were consolidated for the termination hearing, which took place in November 1999. Except for the lack of evidence of any efforts the State might have made toward adoption, the sufficiency of the evidence to support the

order of termination is not questioned by this appeal. We have reviewed the evidence and except for the issue raised by the father, the evidence is clearly sufficient to support the findings of the trial court. A summary of the evidence would therefore be superfluous, and will not be given.

The trial court found that there had been a determination that the children came within the conditions of § 43-247(3)(a), that reasonable efforts under the direction of the court had failed to correct the conditions leading to that determination, that the children had been in out-of-home placement for 18 or more consecutive months prior to the filing of the petition, and that the parents had failed to correct the conditions leading to the children's out-of-home placement in spite of reasonable efforts and services to the parents ordered by the court. The court found that termination of parental rights was in the best interests of the children and terminated both parents' rights to the children. Only the father appealed. The two cases were consolidated for briefing and oral argument in this court, and we consolidate them for opinion as well.

## ASSIGNMENTS OF ERROR

The father alleges that the trial court's ruling was not supported by clear and convincing evidence in that (1) "an adoptive family existed as required by § 43-292.02(1) R.R.S 1943" and (2) termination was in the best interests of the children because "there was no showing whatsoever of the existence of proposed adoptive parents." These assignments raise but one question, whether in applicable termination proceedings the State must prove it complied with § 43-292.02(1) in order for parental rights to be terminated.

## STANDARD OF REVIEW

The question presented by this appeal is one of statutory construction. Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *In re Interest of Dustin H. et al.*, 259 Neb. 166, 608 N.W.2d 580 (2000).

## ANALYSIS

We note initially that the trial court made a finding in both orders that the children had been in an out-of-home placement

for 18 or more consecutive months, which was ground for termination pursuant to § 43-292(7) (Cum. Supp. 1996) prior to its amendment in 1998, rather than finding that the children had been in an out-of-home placement for 15 or more months of the most recent 22 months, as alleged in the State's petition pursuant to § 43-292(7) (Reissue 1998). Section 43-292, as amended by 1998 Neb. Laws, L.B. 1041, allows for termination when the child has been in out-of-home placement for "fifteen or more months of the most recent twenty-two months," as opposed to the previous 18-month requirement. Because the 15-month requirement is necessarily satisfied by a finding that the children had been in an out-of-home placement for 18 consecutive months, the erroneous reference is harmless.

In summary, § 43-292 provides for the termination of parents' rights to their children when the court finds that termination is in the best interests of the children and when 1 or more of the 10 grounds specified in that statute are met, such as abandonment or neglect. The State's proof must be by clear and convincing evidence. *In re Interest of Lisa W. & Samantha W.*, 258 Neb. 914, 606 N.W.2d 804 (2000). The requirements of this statute have clearly been satisfied, and the father does not argue otherwise.

Section 43-292.02 was enacted by L.B. 1041. Section 43-292.02 is titled "Termination of parental rights; state; duty to file petition; when" and provides in relevant part:

(1) A petition shall be filed on behalf of the state to terminate the parental rights of the juvenile's parents or, if such a petition has been filed by another party, the state shall join as a party to the petition, *and the state shall concurrently identify, recruit, process, and approve a qualified family for an adoption of the juvenile*, if:

(a) A juvenile has been in foster care under the responsibility of the state for fifteen or more months of the most recent twenty-two months; or

(b) A court of competent jurisdiction has determined the juvenile to be an abandoned infant or . . . that the parent has committed murder of another child of the parent [or] attempted . . . to commit murder [of] another child of the parent . . . .

. . . .

(3) The petition is not required to be filed on behalf of the state or if a petition is filed the state shall not be required to join in a petition to terminate parental rights or to concurrently find a qualified family to adopt the juvenile under this section if:

(a) The child is being cared for by a relative;

(b) The Department of Health and Human Services has documented in the case plan or permanency plan, which shall be available for court review, a compelling reason for determining that filing such a petition would not be in the best interests of the juvenile; or

(c) The family of the juvenile has not had a reasonable opportunity to avail themselves of the services deemed necessary in the case plan or permanency plan approved by the court if reasonable efforts to preserve and reunify the family are required under section 43-283.01.

(Emphasis supplied.)

To economize on words, we shall refer to the clause which requires the State to identify, recruit, process, and approve a qualified family for an adoption of the juvenile whenever it initiates or joins in a proceeding to terminate parental rights as the "quest for adoption provision." The father argues that the State's compliance with that provision in § 43-292.02 is a necessary element for termination, to the same extent as the provisions of § 43-292.

The father argues that the word "shall" obligates the State to prove it has made the necessary quest for adoption by identifying prospective parents for the child. We agree that the State is required by that statute to make a quest for adoption. However, if the father's position is correct—if the State does not perform as directed in § 43-292.02 or if it simply is not successful in locating adoptive parents for a child—are termination proceedings initiated in vain? If this proposition were true, parental rights could never be terminated unless adoptive parents were located.

In construing a statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable

construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose. See, *In re Interest of Lisa O.*, 248 Neb. 865, 540 N.W.2d 109 (1995); *In re Interest of Michael M.*, 6 Neb. App. 560, 574 N.W.2d 774 (1998). In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *In re Interest of Todd T.*, 249 Neb. 738, 545 N.W.2d 711 (1996).

In 1997, the Nebraska Legislature passed L.B. 1041, a part of which was codified to be § 43-292.02, to comply with the federal Adoption and Safe Families Act of 1997 (ASFA). The ASFA, which requires, inter alia, the states to either initiate or join a petition to terminate parental rights in certain situations, necessitated state compliance as a condition of ongoing receipt of federal child welfare and foster care funding.

The legislative history of L.B. 1041 discloses the introducer's statement of intent, which states that the bill was intended to comply with the ASFA. Therefore, we look to the construction of the federal act to shed light upon the Legislature's construction of § 43-292.02. The ASFA is "[a]n [a]ct to promote the adoption of children in foster care." Pub. L. No. 105-89, 111 Stat. 2115 (1997). The AFSA provided for state adoption statutes to be amended to provide grounds for parental rights' termination upon a child's having been in foster care for 15 of the most recent 22 months. It also mandated more grounds for termination of parental rights based upon the parent's abuse of the child or his or her sibling, and provided that reasonable efforts to reunify families are not required in some circumstances. The ASFA required as a condition of ongoing federal funding that states' plans contain "assurances that in administering and conducting service programs under the plan, the safety of the children to be served shall be of paramount concern." Pub. L. No. 105-89, § 305, 111 Stat. 2115, 2131 (1997), codified at 42 U.S.C. § 629b(a)(9) (Supp. IV 1998). It is clear that the ASFA was designed to accelerate the termination of parental rights in those cases where Congress felt termination was justified and clearly necessary, such as when the parent had murdered a sibling of the child.

■ Section 43-292.02 was plainly patterned after the ASFA and complies with its directives. Congress clearly intended to encourage the states to locate families to adopt children whose parents' rights were likely to be terminated and were therefore likely to be in need of adoptive parents. The ASFA gives no indication that Congress intended to limit termination proceedings to children for whom the states had located adoptive parents.

The director of the Department of Health and Human Services testified in support of L.B. 1041 to the Legislature's Health and Human Services Committee that "[m]ost adoptions that are processed by HHS involve children with very special needs . . . most children in our custody have some history of family dysfunction and a number of the children have experienced serious trauma in their lives," committee hearing, 95th Leg., 2d Sess. 11-12 (Jan. 22, 1998), and that "this is a difficult population to get placed," *id.* at 18. It is clear that many parents' rights to their children are and should be terminated, notwithstanding the fact that often such children are not likely to be adopted by someone else. Section 43-292.02 was enacted to comply with the ASFA, and we find that the Legislature did not intend to change the directive of the federal ASFA, given the stated purposes of L.B. 1041 to "promote adoption, guardianship or other permanency arrangements for children in the custody of the Department of Health and Human Services" and to comply with the ASFA. Introducer's Statement of Intent, 95th Leg., 2d Sess. (Jan. 22, 1998).

In construing a statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose. *In re Interest of Lisa O.*, 248 Neb. 865, 540 N.W.2d 109 (1995). The interpretation the father contends for would largely eliminate terminations and require warehousing of many children with DHHS. This result is clearly not within the purposes of L.B. 1041.

■ "The foremost purpose and objective of the Nebraska Juvenile Code is to promote and protect the juvenile's best interests." *In re Interest of Lisa O.*, 248 Neb. at 870, 540 N.W.2d at

113. Accord *In re Interest of D.D.P.*, 235 Neb. 864, 458 N.W.2d 193 (1990). The Legislature has clearly set out the grounds for parental rights termination in § 43-292, which states 10 circumstances in which parental conduct may be grounds for parental rights termination. For termination of parental rights, the State must prove at least one of the elements required by § 43-292 and that termination would be in the best interests of the juvenile and nothing else. See *In re Interest of Lisa W. & Samantha W.*, 258 Neb. 914, 606 N.W.2d 804 (2000). Section 43-292.02 cannot be interpreted to largely destroy the prospects of termination when termination is in the best interests of the child. The juvenile code must be construed to ensure the rights of all juveniles to care and protection. Neb. Rev. Stat. § 43-246 (Reissue 1998). "Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the children require termination of the parental rights." *In re Interest of Michael B. et al.*, 258 Neb. 545, 557, 604 N.W.2d 405, 414 (2000).

## CONCLUSION

Based upon our review of L.B. 1041, the ASFA, and the juvenile code, we conclude that when seeking to terminate parental rights pursuant to § 43-292, the State need not prove it has located an adoptive family or that it has made a quest for adoption as required of it pursuant to § 43-292.02. We therefore affirm the judgment of the county court terminating the father's parental rights.

AFFIRMED.