NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

7th Circuit Court-Rochester Family Division
No. 2022-0257


IN RE H.C.


Argued: February 23, 2023
Opinion Issued: November 14, 2023


Law Office of Joshua L. Gordon, of Concord (Joshua L. Gordon, on the brief and orally), for the petitioners.


John A.M. Hinsman III, of Dover, on the brief and orally, for the respondent.


BASSETT, J.  The respondent, the mother of H.C., appeals an order of the Circuit Court (Cross, J.) that terminated her parental rights after the court found that she had been convicted of a felony assault which resulted in injury to H.C.'s sibling.  See RSA 170-C:5, VII(d) (2022).  This appeal requires that we address the following issues: (1) whether RSA 170-C:5, VII(d) applies in this case when H.C. was born after the date of the felony assault; (2) whether RSA 170-C:5, VII(d) applies to convictions obtained outside the State of New Hampshire; and (3) whether the trial court erred in finding that termination of the respondent's parental rights was in H.C.'s best interest.  Because we conclude that RSA 170-C:5, VII(d) applies and that the trial court did not err in

ruling that termination of the respondent's parental rights was in H.C.'s best interest, we affirm its decision.

## I. Background

The following facts were found by the trial court or are supported by the record. H.C. was born in December 2015. Prior to H.C.'s birth, in 2014 and 2015, the respondent sexually assaulted H.C.'s sibling. In 2017, the respondent was convicted in Maine of a Class A felony for the December 2014 sexual assault of the sibling, see Me. Rev. Stat. Ann. tit. 17-A, § 253 (Supp. 2023), and she was sentenced to prison for a minimum of eight years. The respondent's parental rights over H.C.'s sibling were terminated in 2017.

At the time of H.C.'s birth, the respondent was under house arrest for several pending Maine charges and the respondent's two sisters were appointed as co-guardians of H.C. After one year, one of the sisters became H.C.'s sole guardian. The respondent has not seen H.C. since she was "not quite 2 years old."

In January 2020, H.C.'s guardian and her husband filed a petition to terminate the respondent's parental rights alleging that the respondent: (1) had abandoned H.C., see RSA 170-C:5, I (2022); (2) had failed to support, educate or care for H.C., see RSA 170-C:5, II (2022) (amended 2022); and (3) had been convicted of felony assault against a sibling of H.C., see RSA 170-C:5, VII(d). Following a three-day hearing, the trial court granted the petition, ruling that the respondent "was convicted of a felony sexual assault that resulted in injury to [H.C.]'s sibling," see RSA 170-C:5, VII(d), and that termination of the respondent's parental rights was in H.C.'s best interest. This appeal followed.

## II. Analysis

Before a court may order the termination of parental rights, the petitioning party must prove a statutory ground beyond a reasonable doubt. In re S.T., 169 N.H. 441, 448 (2016). RSA 170-C:5 (2022) (amended 2022) sets forth the grounds upon which a petition to terminate parental rights may be granted. In this case, we are asked to interpret RSA 170-C:5, VII(d), which provides that a petition to terminate parental rights may be granted when:

> VII. The parent has been convicted of one or more of the following offenses:
>
> > (a) Murder, pursuant to RSA 630:1-a or 630:1-b, of another child of the parent, a sibling or step-sibling of the child, the child's other parent, or other persons related by

2

consanguinity or affinity, including a minor child who resided with the defendant.

(b) Manslaughter, pursuant to RSA 630:2, of another child of the parent, a sibling or step-sibling of the child, the child's other parent, or other persons related by consanguinity or affinity, including a minor child who resided with the defendant.

(c) Attempt, pursuant to RSA 629:1, solicitation, pursuant to RSA 629:2, or conspiracy, pursuant to RSA 629:3, to commit any of the offenses specified in subparagraphs VII(a) and VII(b).

(d) A felony assault under RSA 631:1, 631:2, 632-A:2, or 632-A:3 which resulted in injury to the child, a sibling or step-sibling of the child, the child's other parent, or other persons related by consanguinity or affinity, including a minor child who resided with the defendant.

The respondent first argues that RSA 170-C:5, VII(d) does not apply in this case because H.C. had not yet been born at the time the assault was committed; therefore, she posits: (1) H.C. was not a sibling of the respondent's older child at the time that the respondent committed the charged assault; and (2) H.C. "was incapable of being injured pursuant to RSA 170-C:5, VII(d)." The petitioners contend that this issue has not been preserved for our review because the respondent first raised it in the motion for reconsideration that she filed in the trial court. The record reflects that the petitioners filed an objection to the motion and that the trial court denied the respondent's motion "for the reasons cited in the [petitioners'] objection."

The purpose of our preservation rule is to ensure that trial courts have the opportunity to rule on issues and to correct errors before parties seek appellate review. State v. Perez, 173 N.H. 251, 258 (2020). Here, because the trial court had an opportunity to consider this purely legal question of statutory interpretation when it reviewed and denied the respondent's motion for reconsideration, we conclude that the issue has been preserved for our review. See State v. Gross-Santos, 169 N.H. 593, 598 (2017).

Before addressing the merits of the respondent's arguments, we summarize our well-established principles of statutory interpretation. Statutory interpretation presents a question of law that we review de novo. Avery v. Comm'r, N.H. Dep't of Corr., 173 N.H. 726, 733 (2020). We interpret legislative intent from the statute as written. Id. However, we do not read words or phrases in isolation, but, rather, in the context of the entire statutory scheme. State v. Folds, 172 N.H. 513, 521 (2019). Our goal is to apply

3

statutes in light of the legislature's intent in enacting them and in light of the policy sought to be advanced by the entire statutory scheme. Id. We will give effect to the plain and ordinary meaning of the language used in the statute unless such an interpretation would lead to an unjust and seemingly illogical result. See, e.g., State v. Carpentino, 166 N.H. 9, 20 (2014).

With these principles in mind, we address the respondent's argument that RSA 170-C:5, VII(d) does not apply because H.C. was born after the respondent assaulted H.C.'s sibling. RSA 170-C:5, VII(d) authorizes the termination of an individual's parental rights when the individual has been convicted of "[a] felony assault under RSA 631:1, 632:2, 632-A:2 or 632-A:3 which resulted in injury to the child, a sibling or step-sibling of the child . . . ." RSA 170-C:2 (2022) defines "child" as "a person less than 18 years of age." The respondent argues that, because H.C. was not yet born, she "was not a 'child' within the meaning of RSA 170-C:2 when the assault occurred." Accordingly, she argues, H.C. "was incapable of being injured pursuant to RSA 170-C:5, VII(d)." She further asserts that, because H.C. was not yet born, she was not a sibling of the victim at the time the assault was committed and "[t]herefore she was incapable of being injured" pursuant to RSA 170-C:5, VII(d). We disagree.

"Sibling" is defined as "one of two or more persons who have the same parents but who are not necessarily of the same birth; *sometimes* one of two or more persons having one common parent." Webster's Third New International Dictionary 2110 (unabridged ed. 2002). We decline to read a requirement into the statute that the child who is the subject of the termination petition must have been injured by the felony assault of the child's sibling. See In re J.P., 173 N.H. 453, 460 (2020) (when interpreting statutes, we give effect to every word of the statute whenever possible and will not consider what the legislature might have said or add language that the legislature did not see fit to include). Moreover, the statute does not require that the child who is the subject of the termination petition have been born at the time of the assault. Rather, the statute makes clear that a child whose sibling has been injured in a felony assault, as described in the statute, may be the subject of a petition to terminate the parental rights of the perpetrator parent.

Review of the legislature's expressed purpose in enacting the statute supports our conclusion. Paragraph VII of RSA 170-C:5 was enacted in 1999 to bring New Hampshire "into compliance with the federal Adoption and Safe Families Act" (ASFA) and to ensure that New Hampshire qualified for the continued receipt of federal funding for its child protection system. See Laws 1999, ch. 133; N.H.H.R. Jour. 227 (1999). Section 1 of Chapter 133 provides:

Purpose; Intent. The purpose of this amendment to RSA 170-C is to initiate New Hampshire's compliance with the Adoption and Safe Families Act of 1997 that became effective on November 19, 1997. The Adoption and Safe Families Act is designed and intended to

4

reform parts of the current child welfare system and to promote the safety, permanency and well-being of children in out-of-home placements.

Laws 1999, 133:1. In 2005, the legislature expanded the protection provided by RSA 170-C:5, VII(d) to cases in which the parent had been convicted of a felony assault which resulted in injury to a sibling or step-sibling of the child. Laws 2005, ch. 235.

Prior to passage of the federal ASFA, "state and federal law appeared to give primary consideration to the rights of parents, as opposed to the welfare of their children." State ex rel. Children, Youth v. Amy B., 61 P.3d 845, 847 (N.M. Ct. App. 2002). The ASFA specifically provides that "the child's health and safety shall be the paramount concern" and that

reasonable efforts [to preserve and reunify families] shall not be required to be made with respect to a parent of a child if a court of competent jurisdiction has determined that (i) the parent has subjected the child to aggravated circumstances (as defined in State law, which definition may include but need not be limited to abandonment, torture, chronic abuse, and sexual abuse)[.]

42 U.S.C.A. § 671(a)(15)(A),(D)(i).

"The ASFA required as a condition of ongoing federal funding that states' plans contain 'assurances that in administering and conducting service programs under the plan, the safety of the children to be served shall be of paramount concern.'" In re Interest of Georgina V., 620 N.W.2d 130, 134 (Neb. Ct. App. 2000). "It is clear that the ASFA was designed to accelerate the termination of parental rights in those cases where Congress felt termination was justified and clearly necessary, such as when a parent had murdered a sibling of the child." Id.

To adopt the temporal limitation proffered by the respondent would limit to an appreciable extent the purpose of the statute — the protection of a child whose parent has been convicted of one or more of the enumerated felonies. See State v. Kay, 115 N.H. 696, 698 (1975) (declining to adopt interpretation of consumer protection statute that would "nullify[ ] to an appreciable extent the purpose of the statute"). The language of RSA 170-C:5, VII(d) is also clear that the assault conviction supporting a termination petition is not limited to one that caused injury to the child who is the subject of the petition; rather, an assault that caused injury to the child's sibling or step-sibling is also a ground for termination.

Because there is no dispute that the respondent is the mother of both H.C. and the child whom she sexually assaulted, the respondent's first claim of error fails.

The respondent next argues that because she was convicted of committing sexual assault in Maine, her conviction does not come within the scope of the offenses that satisfy the requirements of RSA 170-C:5, VII(d). She contends that the trial court should not have looked beyond the language of the statute because its language is clear and unambiguous. The petitioners disagree, arguing that "[s]tatutes must be construed 'in the context of the overall statutory scheme.'" We agree with the petitioners.

Under a literal reading of the statute, a parent who had been convicted in New Hampshire of committing a felony assault upon a child's sibling, resulting in injury to the sibling, would be subject to termination of parental rights over the child under RSA 170-C:5, VII(d), whereas, a parent who had been convicted in Maine of committing felony assault for the identical conduct, resulting in the same injury to the sibling, would not be subject to termination of parental rights over the child under RSA 170-C:5, VII(d). To apply the statute in this way would lead to drastically different consequences for both the parents and the children despite the parents having been convicted for the same injurious conduct.

The respondent offers no plausible explanation why the legislature would create such a distinction, arguing simply that construing the statute to apply to convictions obtained in another state "would invite trial courts to interpret non enumerated, non New Hampshire convictions without the guidance of the legislature." We are not persuaded by this argument. The legislature's identification of convictions for felony assault under four New Hampshire criminal statutes resulting in injury to a child of the perpetrator parent provides clear guidance to trial courts in determining whether out-of-state convictions qualify as a ground for termination of parental rights.

We conclude that to construe the statute as providing for termination of parental rights of a parent who commits a felony assault upon a sibling in New Hampshire, but not doing so if the same parent commits the same felony assault upon the sibling across the border in Maine, would be both illogical and unjust. We have long held that we will not give effect to the plain and ordinary meaning of the language used in a statute when that interpretation leads to an unjust and seemingly illogical result. See Doe v. State, 114 N.H. 714, 717 (1974) (in absence of any sound reason of policy or otherwise for unfair discrimination produced by literal reading of statute, court rejected interpretation that would bar defendant whose only sentence following conviction was a fine from seeking annulment of that conviction); State v. Carpentino, 166 N.H. 9, 20 (2014) (recognizing when interpreting sentencing statute that this court "will avoid construing statutes in a manner that would

6

produce an unjust and seemingly illogical result"); St. Onge v. Oberten, LLC, 174 N.H. 393, 395 (2021) (court will construe statutes in harmony with overall statutory scheme and to avoid an unjust result). Therefore, we reject the respondent's literal reading of the statute. Rather, we hold that the use of the word "under" in RSA 170-C:5, VII(d) requires that the elements of the offense giving rise to an out-of-state conviction must be the equivalent of those required for conviction in New Hampshire. In this case, the trial court compared the elements of RSA 631-A:2 (2016) with those of the Maine statute under which the respondent was convicted, see Me. Rev. Stat. Ann. tit. 17-A, § 253, and found: "It is clear, therefore, that the New Hampshire and Maine statutes proscribe the same conduct; mother was convicted of violating a statute that is essentially the same as RSA 631-A:2." The respondent does not challenge this finding on appeal.

Finally, the respondent argues that the trial court erred in finding that termination of her parental rights was in the best interest of H.C. After a statutory ground for termination of parental rights is established, the court must consider whether termination, or some alternative dispositional order, is in the child's best interest. In re J.D., 175 N.H. 108, 114 (2022). We will not disturb the trial court's findings unless they are unsupported by the evidence or plainly erroneous as a matter of law. Id. at 114-15.

To support her challenge to the trial court's best interest ruling, the respondent observes that she "has had consistent and appropriate contact with [H.C.] despite her incarceration and has a positive and appropriate relationship with [H.C.]." She contends that "[g]iven her incarceration and the guardianship, there is no compelling reason for a termination of her parental rights." In contrast, the petitioners assert that "H.C. has never known her biological mother, and has little idea of her beyond a voice on a telephone."

As the trial court observed, when determining the best interest of the child, the dominant consideration is the child's welfare, which prevails over the interest of the parent. See In re S.A., 174 N.H. 298, 300 (2021). The court made the following findings to support its best interest determination: (1) guardianship is "always modifiable" and the respondent "has at times told others that she might request termination of the guardianship upon her release from prison"; (2) the petitioners intend to adopt H.C.; and (3) H.C. "is fully adjusted to her life with the petitioners and the other children in their home" and "closely bonded to all of them." The guardian ad litem also supported the petitioners' petition, observing that "the basis for the [respondent]'s 8-year prison sentence and 18 years on supervised release thereafter is for sexually assaulting her 3-year-old son and endangering the welfare of her 5-year-old daughter," and opining that "termination is necessary to protect [H.C.]'s safety, security and welfare."

7

The trial court concluded that H.C. "will know that petitioners, who have been the only stable and consistent presence in her life, will always be there for her." On the record before us, we cannot say that the trial court erred by concluding that terminating the respondent's parental rights was in the best interest of H.C.

We believe that our conclusion today applies RSA 170-C:5, VII(d) as intended by the legislature and reflects the policy sought to be advanced by the entire statutory scheme. See Folds, 172 N.H. at 521. If the legislature disagrees with this interpretation, it is free to amend the statute as it deems appropriate.

Affirmed.

HICKS and DONOVAN, JJ., concurred; MACDONALD, C.J., and HANTZ MARCONI, J., dissented.

MACDONALD, C.J., and HANTZ MARCONI, J., dissenting. The legislature enacted a statute specifically referring to a series of New Hampshire crimes. See RSA 170-C:5, VII (2022). If a parent is convicted of one of those crimes, it could be the basis for termination of his or her fundamental parental rights. Concluding that the legislature's plain language "leads to an unjust result," the majority effectively rewrites the statute to incorporate similar crimes in other states. Because we do not agree that our role extends to the extensive revision of duly enacted statutes, we respectfully dissent.

I

RSA chapter 170-C authorizes a court to order the termination of parental rights when certain conditions exist. The conditions pertinent to this case are set forth in RSA 170-C:5, VII. Under that subsection, a termination petition may be granted when the parent has been convicted of one or more of the following offenses:

(a) Murder, pursuant to RSA 630:1-a or 630:1-b, of another child of the parent, a sibling or step-sibling of the child, the child's other parent, or other persons related by consanguinity or affinity, including a minor child who resided with the defendant.

(b) Manslaughter, pursuant to RSA 630:2, of another child of the parent, a sibling or step-sibling of the child, the child's other parent, or other persons related by consanguinity or affinity, including a minor child who resided with the defendant.

(c) Attempt, pursuant to RSA 629:1, solicitation, pursuant to RSA 629:2, or conspiracy, pursuant to RSA 629:3, to commit any of the offenses specified in subparagraphs VII(a) and VII(b).

(d) A felony assault under RSA 631:1, 631:2, 632-A:2, or 632-A:3 which resulted in injury to the child, a sibling or step-sibling of the child, the child's other parent, or other persons related by consanguinity or affinity, including a minor child who resided with the defendant.

The petition rests, in part, on the allegation that RSA 170-C:5, VII(d) applies in light of the respondent's conviction in Maine. That requires the court to resolve two questions: whether a felony assault occurred under any of the enumerated statutes and, if so, whether it resulted in injury to a "sibling" of H.C.

Taking the second question first, resolution requires nothing more than a straightforward application of the plain meaning of "sibling." As applied to the undisputed facts, the dictionary definition of sibling cited by the majority establishes that H.C. is a sibling of the older child who was sexually assaulted. There is no ambiguity. We agree with the majority's conclusion in that respect.

However, we respectfully take issue with the remainder of its analysis. As a matter of basic principles of statutory interpretation, we would proceed to the next issue. The majority takes a different course. It detours to consider what it characterizes as the "legislature's expressed purpose in enacting the statute." In the face of an unambiguous statute, we question what objective is served by such an inquiry. But, if we were to consider the "expressed purpose," we would consult RSA 170-C:1 (2022), which is captioned "Purpose." That provision states:

> The purpose of this chapter is to provide for the involuntary termination of the parent-child relationship by a judicial process which will safeguard the rights and interests of all parties concerned and when it is in the best interest of the child. Implicit in this chapter is the philosophy that whenever possible family life should be strengthened and preserved, and that the parent-child relationship is to be terminated only when the adoption of that child may be contemplated.

The majority overlooks RSA 170-C:1 and, instead, relies on a purpose statement appearing in a 1999 session law. The 1999 session law set forth an initial version of RSA 170-C:5, VII(d). However, six years later, the legislature "repealed and reenacted" RSA 170-C:5, VII and, while it set forth the new subsection (d), it did not contain the "expressed purpose" statement the majority quotes. In other words, the "expressed purpose" language on which the majority relies was never actually considered by the legislature when it

9

repealed and reenacted RSA 170-C:5, VII(d) six years later. This underscores the hazards of relying on stray bits of legislative history.

The majority's apparent objective in discussing the 1999 session law's purpose statement is to inform the reader that the law was to "initiate New Hampshire's compliance with the Adoption and Safe Families Act of 1997 [(ASFA)]," a federal statute. The majority quotes a Nebraska intermediate appeals court: "It is clear that the ASFA was designed to accelerate the termination of parental rights in those cases where Congress felt termination was justified and clearly necessary, such as when the parent had murdered the sibling of a child." In re Interest of Georgina V., 620 N.W.2d 130, 134 (Neb. Ct. App. 2000). With respect, what Congress may or may not have "felt" is irrelevant to the interpretation of this unambiguous New Hampshire statute. The majority nonetheless extrapolates that the purpose of RSA 170-C:5, VII is "the protection of a child whose parent has been convicted of one or more of the enumerated felonies." However, as noted above, the Legislature has already and quite clearly expressed the purpose of RSA chapter 170-C. See RSA 170-C:1. In sum, if reliance on "purpose" is somehow relevant to the statutory analysis, we would rely on the legislature's expressly codified statement, not the court's extrapolation based on an inapplicable session law.

II

We turn to the question of whether a felony assault occurred under any of the statutes enumerated in RSA 170-C:5, VII(d). As quoted above, the legislature has identified a series of New Hampshire crimes that can be the basis for termination of parental rights. The respondent was convicted of felony sexual assault of H.C.'s sibling in Maine, under a Maine statute. Me. Rev. Stat. Ann. tit. 17-A, § 253 (Supp. 2023). This is certainly a concerning circumstance. Nonetheless, the plain language of RSA 170-C:5, VII(d) precludes the Maine conviction as serving as a basis for termination of the respondent's parental rights. Concluding that it would be "unjust" to apply the statute as written, the majority effectively rewrites it. We believe the statute should be applied as enacted by the legislature and that to rewrite it exceeds our authority.

We begin by observing that RSA chapter 170-C is no ordinary statute. It sets forth the standards and procedures for the termination of a fundamental constitutional right. "[P]arental rights are natural, essential, and inherent rights within the meaning of the State Constitution." In re Baby K., 143 N.H. 201, 205 (1998) (quotation omitted). "We have recognized that the loss of one's children can be viewed as a sanction more severe than imprisonment." In re Noah W., 148 N.H. 632, 636 (2002); see also State v. Robert H., 118 N.H. 713, 716 (1978) ("The permanent termination of the rights of parents over their children is even more final than involuntary commitment or delinquency proceedings."), overruled on other grounds by In re Craig T., 147 N.H. 739,

744-45 (2002)).  "Given the severity of the termination sanction, and the significance of the parental interest, we have held that to terminate parental rights, due process requires proof beyond a reasonable doubt, the same burden of proof required for a criminal conviction and incarceration."  In re Noah W., 148 N.H. at 636 (quotation omitted).

When a statute implicates personal liberties, the judiciary's interpretive lens should especially focus on the legislature's actual words.  For example, we have long recognized that courts should not extend penal statutes "by their spirit or equity to other offences than those which are described, or clearly provided for in their terms.  They are never to be extended by implication." Wood v. Adams, 35 N.H. 32, 36 (1857).  Indeed, as Chief Justice Marshall observed: "The rule that penal laws are to be construed strictly . . . is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department."  United States v. Wiltberger, 18 U.S. 76, 95 (1820).

We recognize that RSA chapter 170-C is not penal in nature and there are, to be sure, interests to be balanced, including the best interest of the child. See RSA 170-C:1.  Nonetheless, given the "severity of the termination sanction" involving this fundamental right, we believe the foregoing principles should apply and a court should not extend this statute's terms beyond its plain language.  Notably, the majority does not conclude that the statute is ambiguous, rather that it would be "unjust" not to apply Maine law.  To that end, we fail to see how it would necessarily be unjust for the legislature to limit the potential grounds for terminating a fundamental constitutional right to convictions under statutes which it itself has enacted and crimes which it itself has defined.

Moreover, we think it is fair to presume that the legislature is, at all times, fully aware that New Hampshire is one of fifty sovereign states in a federal system.  Our statutes are replete with provisions enacted over the years demonstrating our legislature taking into account, in a variety of contexts, the potential applicability of the laws of other states.  See, e.g., RSA 231:132-a, I (2009) ("It shall be an affirmative defense that at the time of the infraction the vehicle was beyond the control of the registered owner as a result of a violation of RSA 262:12, 637:3 or 637:9 or a similar statute in another jurisdiction." (emphasis added)); RSA 400-A:37, IV-a(c) (Supp. 2022) ("[f]or the purposes of subparagraph (b), this chapter includes the law of another state or jurisdiction that is substantially similar to this chapter" (emphasis added)); RSA 561:20 (2019) (referencing "the Uniform Transfers to Minors Act, or under another state's Uniform Transfers to Minors Act or similar statute" (emphasis added)); RSA 650:2, II (2016) ("A person who commits any of the acts specified in subparagraphs (a) through (e) of paragraph I with knowledge that such act involves a child in material deemed obscene pursuant to this chapter is guilty of: (a) A class B felony if such person has had no prior convictions in this state

11

or another state for the conduct described in this paragraph . . . . " (emphasis added)).

The most pertinent example appears in the very next statutory provision following RSA 170-C:5. RSA 170-C:5-a provides for the termination of the parent-child relationship in cases of sexual assault. Termination under this provision may be based upon a finding that the father of the child "[h]as been convicted of or . . . has pled guilty or nolo contendere to a violation of sexual assault as defined in RSA 632-A:2 through RSA 632-A:4, <u>or a similar statute in another state</u> against the birth mother for his conduct in fathering the child." RSA 170-C:5-a, I (2022) (emphasis added).

It is this highlighted language — "or a similar statute in another state" — that the majority effectively inserts, in multiple locations, into RSA 170-C:5, VII. Yet, in enacting RSA 170-C:5, VII(d) and, as described above, reenacting RSA 170-C:5, VII(a)-(c), the legislature has chosen not to do so. To incorporate crimes from other states presents a policy decision and, under our system of separated powers, N.H. CONST. pt. I, art. 37, such a policy decision is for the legislature to make. Of note, in its analogous statute, Maine refers to "[a] comparable crime in another jurisdiction." Me. Rev. Stat. Ann. tit. 22, § 4055(1-A)(B)(12) (2019). The legislature may, or may not, choose to follow Maine. But, that is a decision for it to make.

On the basis of its plain language, the respondent was not convicted "under" the statutes identified in RSA 170-C:5, VII(d). Therefore, the petitioners have failed to prove a statutory ground for termination beyond a reasonable doubt. In light of this conclusion, we do not reach the issue of whether termination is in the child's best interest.

We respectfully dissent.